IN RE APPLICATION OF EADER.

(No. 82-002—Decided February 8, 1982.)

Court of Claims of Ohio.

*Mr. William J. Brown,* attorney general, and *Mr. Richard C. Slavin,* for appellant.

*Mr. Frank J. Macke,* for appellee.

BAYNES, J.   This is a purported appeal generated by the Attorney General's office. The applicant-appellee in this case is the surviving spouse of the victim who was also survived by one child. The original Finding and Recommendation of the Attorney General recommended a $500 allowable funeral expense and a dependent's economic loss and dependent's replacement services loss of $36,630 to the surviving spouse and $12,870 to the child. These three sums total $50,000, the maximum award allowable.

The single commissioner issued an opinion and order referring the file back to the Attorney General. The Attorney General was instructed to calculate dependent's economic loss on the basis of decedent's net, rather than gross, wages. Also, a recommendation was requested on the basis of expense actually incurred by the dependents in obtaining ordinary ser-

vices in lieu of those the victim would have performed for their benefit.

The Amended Finding and Recommendation was that although the "present value" of the widow's economic loss was $33,822, because the daughter incurred no loss by the recomputation, the widow's present value economic loss was computed to be $39,817.

It was found that the widow had incurred "labor costs" of $3,235.96. Payment of that sum was recommended as dependent's replacement services loss. The total of said awards was $43,052.96. (The $500 allowable funeral expense item was previously paid.)

The single commissioner's Supplemental Opinion and Supplemental Order awarded appellee $43,052.96 in a lump sum.

Within the ten-day appeal period the Attorney General appealed stating the single commissioner's order was contrary to law. The applicant did not appeal. Concurrently the Attorney General moved for payment of the $43,052.96 award notwithstanding the appeal. Inadvertently, contrary to a panel of commissioners' order limiting advance payment to $36,630, the entire $43,052.96 was paid. Appellee has repaid the $6,422.96 excess.

The panel of commissioners affirmed the order of the single commissioner. Their order on the overpayment was that the $6,422.96 excess amount should be repaid to appellee.

The Attorney General filed a notice of appeal to the court stating the order of the panel of commissioners was contrary to law. The applicant did not appeal.

From the file it appears a request was directed to the Attorney General's office to appoint, either from among the Assistant Attorney Generals or a special counsel, an attorney to represent the Fund in the appeal to the panel. This court finds the response of the Attorney General less than adequate and inappropriate. If it can be said, the Victims of Crime Act may not be construed so as to require the Attorney General to represent the interests of the Reparations Fund Special Account; there is nothing in the Act or R. C. Chapter 109 with respect to the Attorney General being granted the right to represent the people of this state *pro bono publico,* insofar as the Victims of Crime Act is concerned.

The uniform rule is that attorneys, not parties to litigation,

have no right to appeal. Not being a party herein the Attorney General has no interest in the subject matter of the litigation which is immediate and pecuniary so as to be aggrieved by an order or judgment. 4 Ohio Jurisprudence 3d 276, Appellate Review, Section 123, and at 269, Section 120.

Irrespective of a judicial ruling at some future date, if a like posture should subsequently occur, this court assumes jurisdiction to consider the issues appearing in this record in both aspects. A ruling is crucial and vital to the interests of the Fund and will not be academic or advisory.

As the court noted at the time of oral argument of the appeal, the question presented is not whether the commissioner(s)' prior basis or method of determination of "dependent's economic loss" and "dependent's replacement services loss" was right or wrong. The question is whether the panel of commissioners' order, affirming the single commissioner's order, based on an extended opinion, is unreasonable and unlawful and therefore contrary to law.

R. C. 2743.51(I) states:

" 'Dependent's economic loss' *means loss after a victim's death of contribution of things of economic value to his dependents,* not including services *they would have received from the victim* if he had not suffered the fatal injury, less expenses of the dependents avoided by reason of the victim's death." (Emphasis added.)

Prior to the instant case economic loss was computed on the gross wages of the victim and not the net wages equivalent to the victim's disposable income or take home pay. The deduction from gross wages consists of various direct taxes imposed on those wages by various governmental units, union dues where payment is a condition of employment and any other applicable charges.

The single commissioner noted money loss and pecuniary injury in a death case was held to be based on net pay or disposable income, citing *Gossman, Admx.,* v. *Ohio National Guard* (December 3, 1980), Ct. Cls. No. 80-0033-9. In that case the decedent's gross wages were reduced at least 14 percent by taxes and union dues. The decedent's wages were at common ceramic and tile labor rates.

There is no reason to repeat the discussion and analysis in *Gossman* where split of authority was reviewed. The court re-

jects the arguments on this issue advanced by the Attorney General in the instant appeal. It was pointed out at the oral hearing that Harper and James, who contend net income is the measure to apply, in Volume 2 of their Treatise on Torts (1956), at page 1325, observe:

"As long as the system stays wedded to the single lump sum recovery, our courts simply have to speculate about the uncertainties of the future. With anything as sure as 'death and taxes', the courts are avoiding their responsibilities when they decline to make the best case they can, once all the reasonably available evidence has been brought before them."

All split of authority in federal law as to net or gross wage measure was put to rest in federal cases by the decision in *Norfolk & Western Ry. Co.* v. *Liepelt* (1980), 444 U. S. 490, 62 L. Ed. 2d 689, at pages 493-4. The case involved a wrongful death claim based on FELA employment tried in the Illinois State Court. Justice Stevens speaking for a seven to two court said:

"* * * It is his after-tax income, rather than his gross income before taxes, that provides the only realistic measure of his ability to support his family. It follows inexorably that the wage earner's income tax is a relevant factor in calculating the monetary loss suffered by his dependents when he dies.
" * * *

"Admittedly there are many variables that may affect the amount of a wage earner's future income-tax liability. The law may change, his family may increase or decrease in size, his spouse's earnings may affect his tax bracket, and extra income or unforeseen deductions may become available. But future employment itself, future health, future personal expenditures, future interest rates, and future inflation are also matters of estimate and prediction. * * * We therefore reject the notion that the introduction of evidence describing a decedent's estimated after-tax earnings is too speculative or complex for a jury."

The Attorney General's finding and recommendation should clearly show an analysis of deductions from gross wages. Investigation should clearly show whether the dependents, or any of them, are employed and if so, the amount of their earnings. This is especially important in estimating the percentage of decedent's personal consumption.

With respect to the dependent's replacement services loss the commissioner's opinion was that such loss, under the definition of the statute, did not permit a finding based on an assumed projection, but rather required proof of actual demonstrated loss. The losses incurred could not be projected by an estimate of the value of services the decedent would "have been expected to perform." The allowance of an award for dependent's replacement services loss on the basis of the estimated value of expected services from the decedent is contradictory to the statutory requirement that it be a *"loss reasonably incurred* by dependents after a victim's death *in obtaining ordinary and necessary services* in lieu of those the victim would have performed for their benefit * * * "* R. C. 2743.51(J) (Emphasis added), and would, as the commissioner stated, constitute judicial legislation. The language of the statute requires evidence to demonstrate loss as a fact which can only be done subsequent to the loss, cost or expense being incurred.

The Attorney General argues that the commissioner's ruling places an undue emphasis on the word "incurred." He then attempts to reconcile the use of the phrase *"expenses* reasonably incurred" in R. C. 2743.51(H) and *"loss* reasonably incurred" in R. C. 2743.51(J). This court is not impressed and is unconvinced that if the dependent's replacement services had been referred to as an "expense" rather than as a "loss" construction would then require value of the services to be demonstrated and not based on an estimated basis, as the Attorney General contends.

In both the non-death and death cases either in the case of replacement services loss for the injured party or his family, or in the case of dependent's replacement services loss where the victim dies, both statutes require the expense or loss to have been *"reasonably incurred in obtaining* ordinary and necessary services." The only reasonable construction of the words "incurred in obtaining" is that the amount or value is intended, which can only be ascertained after the fact of the loss or expenditure.

This court suggests that the words expense and loss were not used by the legislature to distinguish a fact but are used interchangeably. It occurs with some frequency in statutes, decisions and in non-technical conversation and writings that

words which are distinguishable are used interchangeably. Upon reflection it occurs to this court that in wrongful death cases the care, advice and training that minors, particularly, get, or are supposed to get, from a deceased parent are elements which can be included in an award of damages in a proper case. In such case the lack of such services or an inadequate replacement of them without an expenditure constitutes a "loss" for which an allowance of an award could be justified. Such cases would provide a reason for the use of the word "expense" in the living situation and "loss" in the death situation.

Finally the Attorney General argues that the failure to permit the estimation of replacement services and the value thereof discriminates between those dependents who are able to advance payment for them and those who are not. The court perceives this to be an inappropriate sociological argument and finds it to be unwarranted and not persuasive. It attempts to justify a result in an attempt to forego or eliminate the necessity of proof. It is frequently resorted to in legal argument, when there is little, if any, logical reason to otherwise justify a result.

This court would direct the Attorney General's attention to the argument which he advanced and the rationale which this court adopted in *In re Martin,* Ct. Cls. No. V77-1308, affirmed in Dec. No. 79-027:

"The only way to prevent fraud and abuse of benefits available under the Crime Victims Compensation Program, is to demand sufficient evidence of the alleged economic loss * * * although it may cause inconvenience, the only reliable method of establishing the alleged economic loss is to place the burden squarely on those who will benefit from the award. Only in this manner may we be guaranteed continued integrity and equitable disbursement of the reparations rotary fund."

R. C. 2743.68(A) provides the vehicle for filing of supplementary claims. This would apparently permit the filing of a claim which might or could have been included in the interval of the original award, but for lack of proof or other reasonable ground was not included as an item in the original application and award determination.

Finally this court does find and conclude that the award of $3,235.96 found and recommended by the Attorney General and allowed in the commissioner(s)' orders is contrary to law.

This court finds that the evidence of value or amount of obtaining ordinary and necessary services in lieu of those the victim would have performed for the dependents' benefit only justifies an award of $625.

| Supplier | Service | Amount of A. G.'s Allowance | Material included | Amount Allowable |
|---|---|---|---|---|
| McComas | Re-roofing | $ 900.00 | | -0- |
| CSM | Hot water tank | $ 450.00 | $239.00 | -0- |
| E.E. Co. | Re-wiring | $ 525.00 | $328.00 | -0- |
| T.H. | Shingle Removal | $ 160.00 | | -0- |
| J.H. | Shingle Rem' & Tr | $ 160.00 | | $160.00 |
| D.R. | Mowing | $ 140.00 | | $140.00 |
| D.C. | Shingle Rem' & Tr | $ 250.00 | | $250.00 |
| R. McC. | Rebuilding | $ 483.46 | | -0- |
| D.E.R. | Window Repair | $ 75.00 | | $ 75.00 |
| R.R. | Sewer Service | $ 92.50 | | -0- |
| | Total | $3,235.96 | | $625.00 |

The evidence shows that the decedent-victim was a painter. There is no evidence that he had the equipment, the expertise or ability to completely reroof a structure, install a new hot water tank and furnace, was skilled in electrical wiring, rebuilding carpentry work, had trucking facilities or had his own roto-rooter. The extent of the repairs to the residence are not, on their face, ordinary services and require something more than a showing that an expenditure was made.

Finally this court would note that the proof of record of the victim's earnings indicates his gross earnings were $11,023.57 in calendar year 1977 and $4,864.50 in calendar year 1978. In 1979 up to April 26th his gross earnings were said to be $280 per week and net $212.07. It was stated that he was not employed between April 26th and May 11th, a two week period, because business was "slow". There is no tax corroboration (W-2 form). It is also to be noted that his employer was Richard C. Eader. There is no indication as to whether there was a family relationship. The inference is that there was a family relationship. The record also indicates the victim had a drinking problem and that his work habits suffered as a result.

This court therefore tends to the view that in determining the basis for projection of future earnings the applicant received a considerable benefit of the doubt.

The order appealed from is affirmed as to the award of

$39,817 as the applicant's dependent economic loss and is modified as to applicant's dependent replacement services loss, reducing it to $625. The applicant-appellee having been paid $36,630 of the modified total award of $40,442 ($39,817 plus $625) a judgment is entered for $3,812 to be paid in a lump sum.

*Order affirmed,*
*as modified.*