IN RE DECERBO.

(No. 82-050—Decided October 20, 1982.)

Court of Claims of Ohio.

*Mr. James R. Catland,* for appellee.
*Mr. William J. Brown,* attorney general, and *Mr. J. Anthony Logan,* for appellant.

BAYNES, J. This is an appeal of an order in Claim No. V80-42503 of a three commissioner panel entered July 28, 1982, affirming the order of a single commissioner. The order awarded appellee $500, the maximum burial allowance, for the victim whose death occurred on February 13, 1980. The order also denied appellee's claim for dependent's economic loss and dependent's replacement services loss. The denial was entered because the evidence of record showed that the collateral source recovery of the dependents exceeded the prior "earnings" or contemplated "earnings" available for the dependent's support had the victim lived. Dependent's replacement services loss was denied for failure of any proof, as required by headnote two of *In re Eader* (Ct. of Claims 1982), 70 Ohio Misc. 17 [24 O.O.3d 83].

The recommendation of the Attorney General was that the victim's demise was a result of his contributory misconduct. The finding and conclusion of the single commissioner and affirmed by the panel was:

"1) There has been no showing that the decedent had engaged in contributory misconduct, within the meaning of R.C. 2743.60(B), during the sixteen month period between the bombing of his car and his shooting death.

"2) The decedent's misconduct at the time of the bombing of his car was not the proximate cause of his death and does not constitute contributory misconduct within the meaning of R.C. 2743.60(D)."

It is necessary to refer to both claim cases for the reason, among others, that some of the evidence contained in the "bombing" case application relates directly to the "shooting" case application. Also relevant is the conclusion of the single commissioner in the bombing case, V79-3886, which reads:

"3) The Applicant's injuries were the natural, probable, and foreseeable consequence of his illegal gambling activities, so that his violation of R.C. 2915.02(A) constitutes contributory misconduct within the meaning of R.C. 2743.60(D).

"4) The applicant's contributory misconduct is sufficient to justify the denial of an award pursuant to R.C. 2743.60(D)."

The determination and order of the single commissioner in the bombing case, V79-3886, which bombing occurred on October 27, 1978, was not appealed.

The determination that the applicant and the victim's three children were not entitled to an award in the instant shooting case was not appealed by them; however, the Attorney General appealed and, as first stated, the single commissioner's order was affirmed by the panel on July 28, 1982.

Although the Attorney General's notice of appeal was general, as to the single commissioner's order and the panel order, there was no prejudice to the state when an award of economic loss and dependent's replacement services loss was denied. The discussion of the appellant with reference to the denial is surplusage and we can properly only consider the first assignment of error in appellant's brief, which is:

"The panel of commissioners erred in determining that an award was not precluded by Ohio Revised Code Section 2743.60 [as to the $500 item of allowable expense]."

The notice of appeal stated that the order of the panel was "unreasonable and contrary to law."

Prior to this court's appeal hearing held October 13, 1982, the Attorney General filed a motion to expand the evidence of record on September 30, 1982, which was after the time for the filing of his appellant's brief. This would be contrary to R.C. 2743.61(A), which limits the court to the record before the commissioners. Alternatively, it was moved to remand the claim to the panel for further hearing on "new evidence." The new evidence was represented to be contained in Federal Bureau of Investigation affidavits of probable cause in a case pending in the United States District Court, Northern District of Ohio, Eastern Division, *United States* v. *Scaffidi,* CR82-112-Y. The motion was denied and dismissed.

On the merits, the Attorney General's argument essentially goes to the weight of the evidence principally developed after the victim suffered the severe physical injuries resulting from the bombing on October 27, 1978. On the morning of that day, Robert DeCerbo entered his vehicle parked in the vicinity of his residence, started the engine, and was in the process of engaging the gears when sound and fury erupted. It is inferrable that murder and not mayhem was intended.

The victim was supine on a couch in his living room at 10:45 p.m. on February 13, 1980 watching a videotape when pellets from two shotgun shots came through the picture window causing his demise within an hour. The Attorney General was of the view that the shotgunning was merely an extension of the earlier bombing assault, and that the victim's contributory misconduct of the first carried over and was thus causally related to the shooting.

The Attorney General sought to convince the commissioner(s) that when one engages in illegal activities certain risks and hazards connected therewith are to be expected and are accepted. However, the commissioner(s) did not find that. there was evidence in the record to conclude that the illegal activity prior to the bombing carried over so as to have been causally related to the shooting. Based on an absence of overt acts following DeCerbo's substantial recovery, the commissioner(s) found no showing of his being engaged in contributory misconduct.

The Attorney General in his brief to the court argues:

"Also, since this involves a continuous activity it can never be considered remote in time or space unless the activity ceased. Further, unless otherwise proved, no reason exists to believe a new or independent superseding act took place. If one did, the burden of producing such evidence should be placed on the claimant since, in the instant case the supposition is that he continued his bookmaking activities in his home prior to his death."

There was no citation of legal authority which supports one or more of the conclusions urged by the appellant. That argument standing alone is not sufficient to cause an appellate court to substitute its judgment for that of the trier of the fact. The decisions of this court have consistently refused to do so. See paragraph one of the headnotes in *In re Saylor* (Ct. of Claims 1982), 1 Ohio Misc. 2d 1, 3 [24 O.O.3d 174].

The Victims of Crime Act is a special statutory proceeding. It did not create a death benefit, a form of health and accident insurance or a welfare fund. It provides a vehicle for certain persons, in a restricted way, to participate in a legislatively created class gift.

Accordingly, the philosophical approach of the decisions of this court uniformly has been that it is "innocent victims" of criminal conduct or those claiming through an "innocent victim," who are *prima facie* entitled to an award under the Ohio Act. By "innocent victim" is meant, with respect to the criminal injurious injury, a person without proximate fault. It is proper to observe that the "innocent victim" concept constitutes the soul of the statute and the solid basis on which it is anchored. See *In re Moss* (June 4, 1981), Ct. of Claims No. 82-021, unreported, and *In re Bertram* (April 23, 1982), Ct. of Claims No. 82-023, unreported, affirming No. V79-3407sc.

While the amount of the award in controversy is relatively small, there is a socially compelling interest involved. The issue is whether the granting of an award was erroneous based on the particular scenario demonstrated by the entire record. The posture is not comparable to one where the entertainer downstairs is oblivious to the entertainment-recreational activities upstairs. Here, the wife and mother of their three children knew, but pretended not to know or want to know, the activity being conducted in the "off limits work-shop," *i.e.,* the room adjacent to the residence living room. Nor did she wish to know the purpose for certain visitors coming to the residence on week-ends. During such times she and the children would depart for an extended visit at her mother's residence.

In order to prove that the anti-social activity prior to the bombing was the same proximate cause of the victim's subsequent demise, it was necessary for evidence to be introduced in the record that as soon as DeCerbo was physically able, to what extent, if any, he re-engaged in the activity which was the proximate cause of his bombing injuries.

It is not persuasive to suggest, or argue, that the powder and pellet treatment occurred because of jealousy over an unidentified female, or that DeCerbo became an informer (for the general good or his salvation) or because he had "welshed" on an obligation (the record indicating a financial reverse prior to the bombing) or that it was not connected with an ongoing rival organizational confrontation for control of territory or activity. For, if those situations existed, or to the extent they existed, they may as reasonably apply to the bombing injury as to the shooting injury. If in fact they were continuing, most, if not all of them, would be sufficient for a finding that the death was a result of the victim's contributory misconduct.

It will serve no useful purpose to review the evidence on which the commissioner found that DeCerbo was not entitled to an award from the bombing in-

juries because of his contributory misconduct. Nor will it serve any useful purpose to review the record of DeCerbo's activity subsequent to the bombing up to the time of his demise. The commissioner(s) found and concluded that there was, "no showing that the decedent had engaged in contributory misconduct * * * within the sixteen month period."

Applying the appellate rule of construing evidence as above indicated, then it is apparent that the commissioner(s) failed to properly consider the presumption to which appellant was entitled if any such presumption was entertained. When the existence of a condition or state of facts is once established by proof, an inference or rebuttable presumption arises that the condition or state of facts continues to exist as before, until the contrary is shown. 29 American Jurisprudence 2d 285, Evidence, Section 237. For example, where one engages in a business or profession without a license or permit as required by statute, a presumption arises that such illegal activity continues to exist.

The presumption of the continuance of a condition or state of facts is a rule of evidence. In this case, it is not necessary to decide whether the presumption, because of expediency or public policy, is sufficiently compelling to be considered in this instance irrebuttable or conclusive.

"A rebuttable presumption is a rule of substantive law declaring that for procedural purposes a certain prima facie probative force will and shall, until evidence sufficient to prove to the contrary is introduced, be provisionally attached to a given state of facts." 29 American Jurisprudence 2d 200, Evidence, Section 165.

The rule in Ohio up to the present is that a presumption is only proper in the absence of evidence by the party in whose favor a presumption would otherwise operate. But if the party introduced evidence tending to prove a fact directly or by inference, which otherwise would be presumed in the absence of such evidence, the presumption never arises. *Ayers* v. *Woodard* (1957), 166 Ohio St. 138 [1 O.O.2d 377], paragraph three of the syllabus. A presumption is a rule which the law makes on a given state of facts. A party against whom a presumption is involved removes its effect when rebutting evidence is produced of a character which leaves the evidence as a whole in such a state that it cannot reasonably be said that the presumption would prevail over the evidence offered to destroy it. *In re Breece* (1962), 173 Ohio St. 542, 555 [20 O.O.2d 155].

There is nothing new or novel in the application of a presumption as a procedural device. It originated by reason of broad common law conceptions or by statute. Others have been founded on basic principles of justice, laws of nature, the experienced course of human conduct and affairs, or the connection usually found to exist between specific agencies. 29 American Jurisprudence 2d 193, Evidence, Section 159.

We find nothing in this record to indicate that the commissioner(s) applied or considered the presumption that the acts of contributory misconduct found with respect to the bombing injury did not resume as soon as DeCerbo's physical condition permitted. Nothing was introduced by appellee to rebut the presumption which the state of record warranted. The failure to consider and apply a presumption after the time of the bombing injury and DeCerbo's resumption of activity after a period of months constituted error. In such a case, reasonable minds could have come but to one conclusion, *viz.*, DeCerbo's demise was a result of his contributory misconduct by reason of which applicant-appellee was not entitled to an award of the $500 burial expense order appealed from.

The court notes in the record that appellee's counsel applied for attorney fees on March 15, 1982 for services rendered in both cases through December 11, 1981

which was applicant's objection to the Attorney General's amended finding and recommendation. No further services appear in the record. A fee of $750 was approved and paid in the bombing case V79-3886. There is no indication of the apportionment of time between the two cases. The record should be reviewed in order that a duplicate or excessive payment is not made for the value of the reasonable commensurate services of appellee's attorney.

Accordingly, the court finds appellant's assignment of error that the order of the panel of commissioners is contrary to law is well made and it is sustained. The order of the panel affirming the award of an allowance of $500 burial expense is reversed and held for naught.

*Order reversed.*