In re McKinnon et al.
In re Nichols.
In re Johnson.

(Nos. V82-30405, -40907, -43426 and V83-51295—Decided May 21, 1984.)

Court of Claims of Ohio.

*Mr. Jerry R. Hatton,* for Laura J. McKinnon.

*Mr. Jeffrey L. Kocian,* for Terry Nichols.

*Mr. Richard E. Reverman,* for Kurt R. Johnson.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Kevin Kerns, Ms. Cordelia A. Glenn, Mr. Timothy J. Mangan* and *Ms. Marie Charvat,* for state of Ohio.

*Mr. Fred Wendell III,* for *amicus curiae* Joann Rembert.

*Mr. Jerome Silver,* for *amicus curiae* Betty Goodman.

*Mr. Eric James Barr,* for *amicus curiae* Grace Preston.

*Mr. Richard E. McCune,* for *amicus curiae* John Kidd.

ZIEGEL, J. Each of the above-captioned cases involves the same basic issue, and they are accordingly consolidated for purposes of appeal to the Court of Claims. That issue is whether R.C. 2743.60(E), which became effective on March 18, 1983, is to be applied retroactively to cases in which the criminally injurious conduct occurred prior to that date. The statute was a part of Am. Sub. S. B. No. 30. Prior to its passage, there was no counterpart in the Victims of Crimes Act. R.C. 2743.60(E) provides as follows:

"Neither a single commissioner nor a panel of commissioners shall make an award to a claimant who is a victim, or who claims an award of reparations through a victim, who, within ten years prior to the criminally injurious conduct that gave rise to the claim, was convicted of a felony or who is proved by a preponderance of the evidence presented to the commissioner or the panel to have engaged, within ten years prior to the criminally injurious conduct that gave rise to the claim, in conduct that, if proven by proof beyond a reasonable doubt, would constitute a felony under the laws of this state, another state, or the United States."

In each of the cases now before the court on appeal, the victim had indeed been convicted of a felony within ten years prior to the criminally injurious conduct.

In the *McKinnon* case, decided on October 6, 1983, and in the *Nichols* case, decided on October 21, 1983, the panel followed the recommendations of the Attorney General and the decisions of the single commissioner, and held that the claimants in those cases were dis-

qualified from receiving an award because of the victims' felony convictions within the ten-year period. In the *Johnson* case, decided November 3, 1983, however, the same panel, without making any reference to either of the two preceding cases, overruled the Attorney General's recommendation, reversed the single commissioner's decision, held that R.C. 2743.60(E) could not be applied retroactively, and ordered the case be referred back to the Attorney General and remanded to a single commissioner for a determination on the merits. As a result of these diverse holdings, the appellants in the first two cases are the claimants, while the Attorney General is the appellant in the last-named case. In this opinion, therefore, the parties are designated as claimants and Attorney General.

The people of Ohio have established a basic principle governing retroactivity in their Constitution. Section 28, Article II thereof provides:

"The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; * * *."

Despite the general nature of this provision, at an early date it was determined that the ban against retroactive legislation is applicable solely to substantive, as opposed to remedial, laws. *Rairden* v. *Holden* (1864), 15 Ohio St. 207. See *Gregory* v. *Flowers* (1972), 32 Ohio St. 2d 48, at 53 [61 O.O.2d 295], for more recent cases supporting this point of view. It is the Attorney General's contention that R.C. 2743.60(E) is not substantive legislation.

Under the constitutional provision as construed the legislature has no power to enact retroactive substantive laws, but does have the power to pass laws having retroactive application that are nonsubstantive. In such a case, however, the legislature has established a standard to determine whether a non-substantive law should be given retroactive application. R.C. 1.48 provides that:

"A statute is presumed to be prospective in its operation unless *expressly* made retrospective." (Emphasis added.)

Thus, even where nonsubstantive legislation is concerned, there is a presumption that its operation is prospective. That presumption can only be removed by express statements as to retroactivity. In discussion of a predecessor to R.C. 1.48 the Supreme Court in *State, ex rel. Andrews,* v. *Zangerle* (1920), 101 Ohio St. 235, paragraph three of the syllabus stated that:

"The word 'expressly,' as used in the statute, carries its usual and customary meaning, to-wit: Clear, definite, plain, direct; as stated or written in the statute, and not left to inference or implication."

Insofar as codified R.C. 2743.60(E) is concerned, nothing is stated therein relative to retroactive application. The Attorney General submits that this required expression of retroactive legislative intent is found in Section 5 of Am. Sub. S.B. No. 30, the bill from which R.C. 2743.60(E) evolved, which provides:

"Divisions (A), (B)(9), and (N) of section 2743.51 of the Revised Code, as amended or enacted by this act and to the extent that they relate to residency requirements for victims, life insurance being a collateral source, and increased awards for funeral expenses, and divisions (C)(8) and (D)(1) of section 2743.59, divisions (E) and (F) of section 2743.66, and division (B) of section 2743.72 of the Revised Code, as amended or enacted by this act and to the extent that they relate to assignments of awards of reparations, apply only to claims for an award of reparations that are based on criminally injurious conduct that occurs on or after the effective date of this act. *All other provisions of this act apply to claims for an award of reparations that are pending on, or filed*

*on or after, the effective date of this act.*" (Emphasis added.)

Since R.C. 2743.60(E) is not mentioned in the first sentence of the above-quoted Section 5, the emphasized last sentence applies to it, and this sentence clearly provides that R.C. 2743.60(E) applies to claims pending on March 18, 1983. Counsel for one of the claimants, however, contends that since Section 5 was not codified, it cannot be controlling law.

Certainly, where the language of a statute is unclear or ambiguous it is appropriate to refer to the uncodified text of the original act as an aid in construction. Cf. R.C. 1.49. There is, however, nothing unclear or ambiguous about R.C. 2743.60(E). Where the language of a statute is clear, it is unnecessary to resort to material outside the statute itself to obtain its meaning. The words of the statute speak for themselves. 50 Ohio Jurisprudence 2d (1961) 150, Statutes, Section 175. While the enactment of legislation precedes codification, the statutes are released to the public in the form of officially codified enactments. The purpose of codification is "to collect and embody in one statute all the laws and parts of laws on the same subject." 50 Ohio Jurisprudence 2d, *supra,* at 67, Section 78. This purpose is not accomplished if, in order to ascertain what the law is, a researcher is required to refer to the printed original statutes, *i.e.,* Ohio Laws, as well as to the Revised Code.

Even though the codification of R.C. 2743.60(E) is silent insofar as its prospective operation is concerned, this court reluctantly concludes that in the enactment of Section 5 of Am. Sub. S.B. No. 30, the General Assembly clearly expressed its intention that R.C. 2743.60(E) should apply to pending cases, such as those now before this court on review, and thus concludes that the requirement of express language of retroactivity in R.C. 1.48 has been com-plied with, even though awkwardly. Therefore, R.C. 2743.60(E) applies to the cases now being reviewed if the statute is construed as being non-substantive.

If R.C. 2743.60(E) contains substantive language, the legislature, on the other hand, was constitutionally inhibited from making its operation retroactive. As indicated, the Attorney General contends that the statute is non-substantive while the claimants urge its substantive quality, and contend that the imposition of the felony restriction upon their claims for reparations is a new disability on a substantive right.

The parties are agreed on the basic definition of a substantive enactment which comes within the constitutional inhibition against retroactive legislation. This is found in the old federal case of *Gospel* v. *Wheeler* (D. N.H. 1814), 22 F. Cas. 756, 767 (No. 13,156), written by Justice Joseph Story:

"Upon principle, every statute, which takes away or impairs *vested rights* acquired under existing laws, or creates a new obligation, imposes a new duty, or *attaches a new disability, in respect to transactions or considerations already past,* must be deemed retrospective * * *." (Emphasis added.)

This definition has been cited with approval in a number of Ohio cases. See, *e.g., Weil* v. *Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198 [22 O.O. 205]; *State, ex rel. Shady Acres Nursing Home, Inc.,* v. *Rhodes* (1983), 7 Ohio St. 3d 7, at 9.

The Attorney General places his emphasis on that part of the foregoing definition which speaks of the impairment of vested rights, and contends that until a single commissioner ruled favorably on claimants' claims for reparations there was no vested right; and that the right to file a claim set forth in the Victims of Crime Act does not constitute any vested interest. In support of this proposition the Attorney

General cites, among others, three previous decisions of this court: *In re Schroepfer* (1983), 4 Ohio Misc. 2d 15; *In re Taylor* (Apr. 2, 1982), Court of Claims No. 82-019, unreported; and *In re Shariff* (Aug. 17, 1982), Court of Claims No. 82-041, unreported.

While each of these cases contains statements favorable to the Attorney General's contention, all of them are inapposite on their facts. None of them deals with statutory retroactivity. In *Taylor,* the claimant failed to file the application for reparations within one year of the date of the criminally injurious conduct, as required by R.C. 2743.56(C) and 2743.60(A). He argued that his failure to file was due to his physical condition, and that under that circumstance, the statute of limitations deprived him of his constitutionally guaranteed equal protection of the laws. The court rejected the argument. It is noted that the statute of limitations existed prior to the date of the criminally injurious conduct.

In the other two cases, the issue was not whether claimant was entitled to an award, but rather how the award should be computed. The distinction between those cases and the ones now before the court is clear when it is considered that the application of R.C. 2743.60(E) deprives the claimants of any award whatsoever. In *Schroepfer,* the claimant failed to file within the time limit applicable thereto for benefits from an available collateral source. The court held that such allowable expense shall be considered as though it had in fact been recouped from a readily available collateral source. In *Shariff,* where the date of criminally injurious conduct preceded the date of such conduct in *In re Eader* (1982), 70 Ohio Misc. 17 [24 O.O.3d 83], the claimant objected to the court applying the rule of *Eader* in determining dependent's replacement services loss and dependent's economic loss. The court held that there was no

question of retroactivity since each case was decided on its own facts. The application of a previously announced judicial policy is not retroactivity.

The Attorney General also calls the court's attention to *State, ex rel. Shady Acres Nursing Home,* v. *Rhodes, supra,* a case involving a nursing home's request for reimbursement from the Ohio Welfare Department for the year 1978. Again, different from the cases *sub judice,* the question was not whether Shady Acres was entitled to any reimbursement, but rather how the amount of that reimbursement should be computed. There, a new statute became effective on November 23, 1977, which based relator's reimbursement on its 1976 cost report. Later, on December 30, 1977, the department adopted line-item ceilings applicable to relator's 1976 report, which report had been filed prior to November 23, 1977. Relator raised the constitutional retroactivity issue on the ground that they were not in effect when the 1976 cost report was filed. The Supreme Court held that there was no retroactivity since relator's right to reimbursement did not vest until 1978, which was after the effective date of the statute. In other words, relator in that case had no right to seek reimbursement for 1978 until 1978 had arrived, which was after the effective date of the statute. In the cases at bar, the right to seek reparations arose before the effective date of R.C. 2743.60(E) — a clear factual distinction.

In *Moore* v. *Bureau of Unemp. Comp.* (1943), 73 Ohio App. 362 [29 O.O. 75], cited by the Attorney General, the court quoted with approval from 11 American Jurisprudence (1937) 1199, Section 370:

"A right cannot be regarded as vested, in the constitutional sense, unless it amounts to something more than a mere expectation of future benefit or interest founded upon an an-

ticipated continuance of the existing general laws."

There plaintiff quit work on August 11, 1941, and filed her claim for unemployment benefits on December 4, 1941. In the meantime the Unemployment Compensation Act was amended effective October 1, 1941, and plaintiff contended for unconstitutional retroactivity. The Unemployment Compensation Act in effect on August 11, 1941, however, provided as follows:

"All the rights, privileges, or immunities conferred by this act, or by acts done pursuant thereto, shall exist subject to the power of the General Assembly to amend or repeal this act at any time."

There is no such reservation of the right to amend or repeal reserved to the General Assembly in the Victims of Crime Act, and again a clear factual distinction between *Moore* and the cases *sub judice* exists.

Claimants rely on cases arising out of workers' compensation statutes. *State, ex rel. Slaughter,* v. *Indus. Comm.* (1937), 132 Ohio St. 537 [8 O.O. 531]; *Weil* v. *Taxicabs of Cincinnati, Inc., supra; Gregory* v. *Flowers, supra* (32 Ohio St. 2d 48 [61 O.O.2d 295]). Each of these cases confirms the proposition that the right to compensation accrues at the time of the injury or death of the worker, and that any subsequent statute which interferes with the rights acquired at the time of the injury may not be applied retroactively. In *Gregory,* the accident occurred in January 1959. The original application for compensation dealt only with a neck injury. In June 1968, the worker filed an application to reactivate and modify his original claim to include the expenses arising out of a back injury, which had subsequently developed from the 1959 accident. The bureau in defense set up a two-year statute of limitations which had been enacted in 1967. The Supreme Court held, at 58:

"The statutory right to file an ap-

plication for modification of an award, which award arose by operation of the workmen's compensation laws of this state, is a substantive right which accrues at the time of the claimant's injury; and when the retroactive application of a statute of limitations operates to destroy that right; such application conflicts with Section 28, Article II of the Ohio Constitution."

The applicable law is well summarized in *Weil* at 204:

"The authorities are uniform to the effect that a law which creates a right or imposes an obligation where none existed before and which relates back so far as to confer upon a party the benefit of such right or the burden of such obligation, effective before the effective date of the law, is unconstitutional."

The Attorney General argues that there is a clear distinction between workers' compensation laws and the Victims of Crime Act, in that under the former the worker no longer had a right of action against his employer, while under the latter the victim still has a right of action against the offender. That argument is specious, and is a matter this court has previously addressed in *In re Mann* (Apr. 25, 1980), Court of Claims No. 80-011, unreported:

"The victim of crime, or if he dies his personal representative, has always had the right of action against the offender. The reason it is not ordinarily pursued is because, to do so, would constitute an act of futility. The Victims Act does not substitute the State Reparations fund for the wrongdoer-offender. It is a newly created right, whereby a victim or claimant may apply for and receive compensation in accordance with statutory limitations."

Further, under R.C. 2743.72, if the victim or claimant does have a collectible cause of action against the offender, the state is subrogated to that right.

Even if it is considered, as is argued, that the Victims of Crime Act constitutes a legislative gift to victims or

those claiming under them, that does not prevent the vesting of the right to receive reparations. An applicable analogy is supplied in pension cases. *State, ex rel. Hanrahan*, v. *Zupnik* (1954), 161 Ohio St. 43 [52 O.O. 481], held that even though a pension may be considered a gratuity, when any particular installment of a pension becomes due, the right of the pensioner thereto becomes vested. *Id.* at 48. A right is "vested" when there is an ascertained person with a present right to present or future enjoyment. 16 American Jurisprudence 2d (1979) 651, Constitutional Law, Section 669.

A claimant for reparations is in the same position as any litigant who seeks unliquidated damages. The right to relief has vested, and that right may not constitutionally be interfered with during the time interval required to determine actual amounts. The time factor is of particular significance in two of the cases now before the court. In the *McKinnon* case, an application for dependents' awards was filed on January 12, 1982. The Attorney General obtained five sixty-day extensions and did not file his finding of fact and recommendation until December 27, 1982. In the *Nichols* case, the application was filed on August 11, 1982. The Attorney General received three sixty-day extensions within which to file his finding of fact and recommendation, which was not filed until April 12, 1983. If these cases had been processed without administrative delays, it appears likely that they would have been concluded before R.C. 2743.60(E) became effective on March 18, 1983. Administrative delay should not be a factor in depriving a claimant of an award.

This court, therefore, holds that a claimant's right to an award of reparations vests at the time of the happening of the criminally injurious conduct, and at that moment becomes a substantive right which cannot constitutionally be interfered with by subsequent legislative enactment. The court further holds that R.C. 2743.60(E), if applied to the cases *sub judice*, "attaches a new disability, in respect to transactions or considerations already past," and such application must accordingly be deemed to be retrospective and unconstitutional.

Claimants also advance the argument that R.C. 2743.60(E) unconstitutionally deprives them of equal protection of the law and of due process. Since the court has determined the constitutional question on the basis of retroactivity, it is unnecessary to rule on other constitutional questions. These issues may properly be considered with regard to cases involving R.C. 2743.60(E) where the criminally injurious conduct occurs subsequent to March 18, 1983. "It is established that a court will not pass upon the constitutionality of a statute * * * unless or until it becomes necessary to do so in order to dispose of the case before it. * * * Courts do not undertake to exercise their power in this connection unless the matter is ripe for decision and the need therefor is imperative." 16 Ohio Jurisprudence 3d (1979) 249, Constitutional Law, Section 118.

In the case of *In re Kurt R. Johnson*, during the proceedings preliminary to the case being submitted to the court on appeal, the single commissioner opined that under R.C. 2743.52 he had no authority to find unconstitutional any portion of R.C. Chapter 2743, either *per se* or in its application, since doing so would go beyond making "awards of reparations * * * if satisfied * * * that the requirements for an award of reparations have been met." On review the panel of three commissioners ruled that it had authority under R.C. 2743.55(A) to determine the constitutionality of the application of R.C. 2743.60(E). R.C. 2743.55(A) provides in pertinent part that:

"A single commissioner or a panel of court of claims commissioners shall hear and *determine all matters relating*

*to claims for an award of reparations."* (Emphasis added.)

R.C. 2743.55(A) must be read *in pari materia* with R.C. 2743.52, and the court accordingly not only affirms the position taken by the panel of commissioners but also specifically extends the authority to determine constitutionality to a single commissioner, in accordance with the terms of R.C. 2743.55(A). The constitutionality of statutes may indeed be a matter "relating to claims for an award of reparations." The court notes that under R.C. 2743.54 each commissioner is "an attorney who ·has been licensed to practice law in this state for at least three years prior to appointment * * *." As such, each commissioner is presumably qualified to rule on questions of constitutionality.

It is further noted that under R.C. 2743.53(A) and 2743.61, the jurisdiction of the Court of Claims in reparation cases is appellate only. The Court of Claims is not exercising appellate jurisdiction when it makes an original decision of any issue presented to it. An "appeal" can only be taken from decisions made by a lower tribunal.

Accordingly, the following orders will be made in the cases now before the court:

(1) In *In re Peter W. McKinnon,* the three-commissioner panel's denial of reparations to the claimants based solely on its erroneous application of R.C. 2743.60(E) will be reversed, and the case will be remanded to that body for the determination of claimants' appeal from the single commissioner on its merits.

(2) In *In re Terry Nichols,* wherein the Attorney General based his findings and recommendations denying reparations on the applicability of R.C. 2743.60(E), which findings and recommendations were affirmed for the same reason by both the single commissioner and the panel of commissioners, the decision of the three commissioners will be reversed, and the case will be remanded to the Attorney General for findings and recommendations on the merits, pursuant to R.C. 2743.59, and for such further proceedings as are provided for by law.

(3) In *In re Kurt R. Johnson,* the order of the panel of commissioners will be affirmed, including the orders made by that body for remand and referral.

*Judgment accordingly.*