[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Elizabeth James, in behalf of her grandchildren, James Lindsay and Davon Still, appeals the decision of the defendants, the state office of victim services and a victim compensation commissioner, denying the plaintiff's application for compensation for the murder of Deborah Lindsay, the plaintiff's daughter and the mother of the children. The defendants acted pursuant to General Statutes § 54-208 (c) on the basis that Deborah Lindsay's behavior directly or indirectly contributed to her murder. The plaintiff appeals pursuant to § 54-211a. Presently before the court is the defendants' motion for summary judgment.
Section 54-211a provides that an appeal of an adverse decision by a victim compensation commissioner is by trial de novo. Therefore, although summary judgment is not available in appeals based on the record of an administrative proceeding, brought under the Uniform Administrative Procedure Act, it is an allowable remedy in appeals brought under § 54-211a, where the court is obligated to undertake de novo factfinding. See Practice Book §§ 379 and 257(d)(5).
A party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Practice Book § 384.
The parties have stipulated that the facts that are material to the plaintiff's application for compensation are those set forth in their "Stipulation" dated April 7, 1997, a copy of which is appended to this decision. There is, therefore, no issue as to any material fact. In summary, the victim, Lindsay, had been working for a gang in Bridgeport, selling drugs on the street. CT Page 4930 One of the gang leaders, who was in charge of collections and enforcement, accused her of holding back proceeds of drug sales, tracked her down and shot her to death. At the time of her death, Lindsay was an addict and had cocaine in her blood system. There is nothing in the stipulation of the parties, however, that suggests that she was engaging in any criminal activity when she was shot.
General Statutes § 54-208 (a) provides that a victim compensation commissioner "may order the payment of compensation to the dependents of any victim of murder. Subsection (c) of that statute provides "In determining whether to make an order (of compensation), . . . a victim compensation commissioner shall consider all circumstances determined to be relevant, including but not limited to provocation, consent or any other behavior ofthe victim which directly or indirectly contributed to suchvictim's . . . death." (Emphasis added.)
General Statutes § 54-211(b) provides "No compensation shall be awarded if (2) the victim violated a penal law of this state, which violation caused or contributed to (her death)."
As noted, the victim compensation commissioner in this case based his denial of compensation on his conclusion that Lindsay's behavior directly or indirectly contributed to her murder, within the meaning of § 54-208 (c). In support of their motion for summary judgment, the defendants maintain that position and also argue that her violation of the drug laws caused or contributed to her murder, thereby invoking § 54-211 (b). The issue posed by the summary judgment motion, therefore, is whether these statutory provisions justified the denial of the plaintiff's application for compensation.
The defendants' argument may be summarized as follows. The establishment of state funded monetary awards to victims of crimes is not a form of insurance or a welfare fund. Rather, it is in the nature of a legislative gift. As such, it is a departure from the common law, and the provisions authorizing the award in a particular case must be strictly construed. There are no Connecticut cases that speak to this theory. The defendants cite cases in New York and Ohio in support of their view of the nature of the statutory scheme. See Med. Trust Financial ServiceCorp. v. New York Crime Victims Board, 640 N.Y. Supp.2d 676
(App.Div. 1966); Rigaud v. Crime Victims Compensation Board,
461 N.Y. Supp.2d 840; In Re DeCerbo, 5 Ohio Misc.2d 11, CT Page 4931449 N.E.2d 526 (Ohio Ct.Cl. 1982).
The defendants contend further that the Connecticut statutory provisions cited and the sparse legislative history indicate that the legislature intended to compensate only "innocent" victims of crime. Since in this case the victim had been involved in illegal activities herself, which were at least tangentially related to the homicide, they argue that she was not an "innocent" victim and was thus disqualified under the law.
In opposition, the plaintiff argues that at the time she was killed, Lindsay was not engaged in any illegal activity. Whatever her behavior had been in the past, it was separated in time and space from the circumstances in existence at the time she became a murder victim. Lindsay was, the plaintiff argues, "apparently hunted down and murdered."
The precise issue before the court is whether the Office of Victim Services or a commissioner may deny an application for crime victim benefits on the basis that the injury or murder was related to illegal activities of the victim that took place at an earlier time, disconnected from the immediate circumstances of the crime. The issue is of first impression under the Connecticut statute.
The court's analysis begins with the observation that the statutory authority for denial of benefits because of the victim's conduct is extremely broad. There is nothing in § 54-208
(c) that suggests that the commissioner must limit his consideration to the victim's behavior at the precise time of the crime. To the contrary, the plain text of the statute requires the commissioner to consider "all circumstances determined to be relevant, including but not limited to . . . any other behavior of the victim which directly or indirectly contributed to such victim's injury or death . . . and any other relevant matters."
The court concludes that the commissioner was authorized to consider any behavior of the victim that directly or indirectly contributed to her death, whenever such behavior may have occurred.
The court's conclusion that the commissioner may consider behavior of the victim that occurred a day or more prior to the time of the crime finds support in the decision of the Ohio court in In Re DeCerbo, supra. In that case, the victim had been a professional gambler prior to his murder. Although he was in his CT Page 4932 home watching T.V. at the time he was shot, the court held that his prior illegal gambling activities constituted "contributory misconduct," thereby disqualifying his dependents from an award under the Ohio crime victim's compensation statute. The court approved the commissioner's reasoning in denying an earlier claim that the murder was "the natural, probable, and foreseeable consequence of his illegal gambling activities."
This court also concludes that the commissioner was justified under § 54-208 (c) in denying the application for benefits on the basis that Lindsay's involvement in drug trafficking prior to the day of her murder constituted "behavior" that contributed directly or indirectly to her death. Not every death of a drug dealer, of course, is traceable to the victim's illegal trade. If Lindsay had been murdered randomly, in a drive-by shooting for example her illegal behavior in the drug market would have been merely a coincidence, rather than a causative factor in her death. But the fact that the murder was committed in this case by a confederate in the trafficking operation, coupled with the fact that the murderer's expressed motive was inextricably related to Lindsay's activities in that trafficking operation, together indicate an obvious causative link between the prior illegal conduct and the murder. Such a causative link supports the determination by the commissioner that Lindsay's former behavior directly or indirectly contributed to her death.
Finally, the court notes that the commissioner's decision reasonably incorporates the concept of the "innocent" victim, in accordance with the legislative history of the statute cited by the defendants. All behavior of a victim that contributes to his or her injury or death would not be grounds for denying benefits. Innocent behavior — the robbery victim who foolishly refuses to give up his money and is killed as a result — is not disqualifying. But such behavior is different from that which is involved in this case. In this case, the relevant behavior of the victim was illegal; she was not an "innocent" participant in the circumstances that ultimately claimed her life.
For all of the foregoing reasons, the court concludes that based on the undisputed material facts, the commissioner's decision should be affirmed and the defendants are entitled to judgment as a matter of law. Their motion for summary judgment is therefore, granted.
Maloney, J. CT Page 4933