**MOORE, Appellee v. BUREAU OF UNEMPLOYMENT COMPENSATION et, Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6328.   Decided November 22, 1943.

Mr. G. O. Osler, Cincinnati, for Alpha Weaver Moore.

Mr. Thomas J. Herbert, Columbus, and Mr. John M. Woy, Columbus, for Bureau of Unemployment Compensation.

Messrs. Taft, Stettinius & Hollister, Cincinnati, for The Philip Carey Mfg. Co., and Leshner Division of The Philip Carey Mfg. Co.

## OPINION

By MATTHEWS, J.

This appeal presents the question of whether a married woman who leaves her employment to re-establish a home by joining her husband who had provided a domicile for her and her children in a city other than that in which she had been employed is entitled to unemployment compensation.

The Board of Review ruled that claimant could not serve a waiting period as defined by the Unemployment Compensation Act, or be paid benefits for the duration of any period of unemployment due to her voluntarily quitting work because of marital obligations, and found also that she had quit her employment voluntarily because of marital obligations when she left her employment to reside with her husband in another city, and, therefore, denied her claim.

On appeal to the Common Pleas Court the finding and order of the Board of Review was reversed and the order of the referee allowing the plaintiff's claim for benefits was reinstated. From that judgment, this appeal was taken.

(1) The plaintiff quit work on August 11th, 1941. She filed her claim for benefits on December 4th, 1941. In the interim the Unemployment Compensation Act (§§1345 to 1345-35, GC) was amended, effective October 1st, 1941.

The plaintiff contends that when she quit on August 11th, 1941, her rights under the law became fixed and vested and that to apply the subsequent amendment to that event would

violate the provisions of the Ohio Constitution against retroactive laws (§28 of Art. II) and the provision of the Fourteenth Amendment to the United States Constitution. It is also claimed that the law if applied as contended by appellant would impair the obligation of the marriage contract, contrary to the provision in both constitutions. As to this latter contention, it is sufficient to state that marriage has never been regarded as a contract within these constitutional prohibitions against laws impairing the obligation of contracts. In 12 Am. Jur., 47, it is stated:

"Marriage is not a contract within the meaning of the provision in the Constitution of the United States prohibiting states from impairing the obligation of contract."

Now, did the plaintiff's rights become fixed on August 11th, 1941?

It is certain that her claim was not fully matured at that time. Ceasing to be employed was only the first step. Before she could obtain benefits it was necessary for her to seek and fail to obtain other employment and establish her status as a person with capacity to work who was unable to obtain it at the time of filing her claim for benefits. In 11 Am. Jur., 1199, it is said:

"A right cannot be regarded as vested in the constitutional sense, unless it amounts to something more than a mere expectation of future benefits or interest founded upon an anticipated continuance of the existing general law."

That the legislature did not intend to confer a vested right that it could not affect by subsequent legislation is clearly stated in the act that was in force on August 11th, 1941, in §1345-30, GC, in which it is provided that:

"All the rights, privileges or immunities conferred by the act, or by acts done pursuant thereto, shall exist subject to the powers of the general assembly to amend or repeal this act at any time."

The reservation is in accordance with the general principle that laws are passed, amended and repealed as changed

conditions dictate in the exercise of sound public policy. This process inevitably affects different members of the public in different degrees, but if that imposed liability it would tend to make our laws as unchangeable as those of the ancient Medes and Persians.

In 11 Am. Jur., 1200, the rule is stated that:

"There can, in the nature of things be no vested right in an existing law which precludes its change or repeal, * * *. In no case is there an implied promise on the part of the state to protect its citizens against incidental injury occasioned by change in the law."

In Tally v Unemployment Compensation Division, etc., ——. Id. ——, 124 Pac. (2d), 784, the court applied a similar law to facts analogous to those in this case and reached the conclusion that the claim of vested right was without merit. We, therefore, hold, that the plaintiff's rights must be determined by the application of the law effective October 1st, 1941, and found in 119 Session Laws, at 821, et seq.

The Board of Review's finding that the plaintiff had quit her employment voluntarily because of marital obligations cannot be disturbed by the Court if it is supported by substantial evidence. Milling Co. v Unemployment Compensation Com., 146 A. L. R. (——Mo.——, 169 S. W. [2d], 929) 239. That she quit because of marital obligations is not merely conceded. It is asserted by her. The only issue is whether she quit voluntarily within the meaning of the law.

The rules determining eligibility for benefits are found in §1345-6, GC, effective October 1st, 1941. The only parts of that section that are at all relevant here are designated as paragraph c of subdivision (5) and paragraph (7) of paragraph d of the same subdivision of the section. These two parts are:

"c. An individual's maximum weeks of benefits per year shall be reduced by six weeks in the event his unemployment results from discharge for just cause in connection with his work, or from voluntarily quitting his work without just cause in connection with such work."

"d. Notwithstanding the provisions of subsection (a) of this section, no individual may serve a waiting period or be paid benefits for the duration or any period of unemployment with respect to which the administrator finds that such individual: * * *

"(7) quit work voluntarily to marry or because of marital obligations;"

We have been furnished with many authorities on the meaning of the word "voluntarily." The dictionary definition is not doubtful. What confronts us is the necessity of determining its meaning as used by the legislature.

The context shows that the term is not used as the antonym of physical impossibility. By the terms of paragraph c, if he is discharged for just cause his benefits are reduced by six weeks; or if his unemployment results from his quitting, his benefits are reduced by the same period, unless there was some reason arising out of his work which justified his quitting. When there is a reason arising out of his work, his benefits are not reduced by six weeks, not because his quitting is involuntary, but because his voluntary act of quitting is justified under the law.

Now then, this provision is followed by the provision enumerating the absolute bars to benefits notwithstanding unemployment. If the employee quits work voluntarily to marry or because of marital obligations, there is no right to benefits. If the reason for quitting, that is, to marry or because of marital obligations, destroys the employee's volition, every quitting under such circumstances would be involuntary, and the provision would be meaningless. If that had been the legislative intent, it would have placed in the appropriate place a provision that quitting to marry or because of marital obligations should be considered involuntary within the meaning of the Act. It did not do so. It could not have meant that by the words employed.

In a certain sense, a person may be said to act under compulsion whenever he performs a moral or legal obligation. He is required or compelled to obey the laws, but a law abiding citizen usually acts voluntarily to gain that description.

We construe the language used to mean that when an employee quits to marry or to perform marital obligations, he does so voluntarily and is not entitled to benefits.

In order to be entitled to benefits the claimant must be "able to work and available for work." If the contract to marry or the obligation of an existing marriage makes quitting employment involuntary, then so long as that status continues, it would destroy availability for work, and

that would exclude from unemployment benefits any person so situated; and that same conclusion is reached that the employee who quits to marry or because of marital obligations is not entitled to benefits.

For these reasons, the judgment of the Court of Common Pleas is reversed and the decision of the Board of Review is affirmed.

ROSS, P. J., and HILDEBRANT, J., concur.