ROBERTS, Appellant,

v.

TREASURER, State of Ohio, et al., Appellees.*

Butcher, d.b.a. Butcher & Son Excavating, Appellant,

v.

Industrial Commission of Ohio, et al., Appellees.

Stump, Appellant,

v.

Treasurer, State of Ohio, et al., Appellees.

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 01AP–535, 01AP–557 and 01AP–558.

Decided Dec. 27, 2001.

---

* Reporter's Note: An appeal to the Supreme Court of Ohio was not allowed in 95 Ohio St.3d 1441, 2002-Ohio-2110, 767 N.E.2d 272.

Jeffries, Kube, Forrest & Monteleone Co., L.P.A., and Mark E. Barbour, for John Roberts.

Mary Ann Ferguson–Rich, for Fred Butcher, d.b.a. Butcher & Son Excavating.

McIntyre, Kahn, Kruse & Gillombardo Co., L.P.A., Robert W. McIntyre and Mark F. Kruse, for Frank Stump.

Betty D. Montgomery, Attorney General, and Peggy W. Corn, Assistant Attorney General, for appellees.

BROWN, Judge.

{¶ 1} This matter concerns three separate cases consolidated for the purposes of appeal. John Roberts, plaintiff-appellant, appeals from a judgment of the Ohio Court of Claims denying his motion for summary judgment and granting a motion for summary judgment in favor of Treasurer, State of Ohio ("Treasurer"), Industrial Commission of Ohio ("commission"), and Bureau of Workers' Compensation ("bureau"), defendants-appellees. Fred Butcher ("Butcher"), plaintiff-appellant, appeals a judgment of the Ohio Court of Claims denying his motion for summary judgment and granting a motion for summary judgment in favor of the state of Ohio ("state"), commission, and the bureau. Frank Stump, plaintiff-

appellant, appeals from a judgment of the Ohio Court of Claims denying his motion for summary judgment and granting a motion for summary judgment in favor of the Treasurer, commission, and the bureau. (The Treasurer, commission, bureau, and state may be referred to either collectively or in various combinations as "appellees" for the remainder of this opinion.)

{¶ 2}  In 1986, the Ohio General Assembly enacted former R.C. 4121.80, which directed the state of Ohio to provide liability insurance to Ohio employers for claims of intentional tort filed by employees of Ohio employers. All Ohio employers were required to make premium payments into the Ohio Intentional Tort Fund ("ITF") via the commission and bureau. Self-insurance or insurance by commercial insurers was not permitted. The claims of intentional tort were to be heard in county common pleas courts to determine liability. If the court found an intentional tort had occurred, the matter was submitted to the commission for a damages determination. Any damages awarded and attorney fees incurred by the employer were to be paid from the ITF. On August 27, 1991, the Supreme Court of Ohio found R.C. 4121.80 unconstitutional in *Brady v. Safety–Kleen* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722. Pursuant to *Brady,* the state ceased making damages determinations and ceased paying funds out of the ITF, although the fund continued to accrue interest.

{¶ 3}  On June 30, 1992, the Ohio General Assembly enacted Section 5, S.B. No. 192, effective September 29, 1992. Section 5 provided that the monies held in the custody of the Treasurer in the ITF under former R.C. 4121.80 would be transferred to the Workers' Compensation Intentional Tort Disbursement Fund. Section 5 also provided that the bureau could distribute (1) attorney fees not to exceed $1,000,000 for services provided to employers under former R.C. 4121.80; (2) administrative fees not to exceed $50,000; and (3) the remaining monies on a pro-rata basis to the employers that had previously made premium payments, reduced by "the amount paid or to be paid by the Industrial Commission or Bureau either in employer attorney's fees or as an award on behalf of such an employer brought under former section 4121.80 of the Revised Code." On September 24, 1992, the operation of S.B. No. 192 was stayed by order of the federal district court in *Rossborough Mfg. Co. v. J. Wesley Trimble* (Sept. 24, 1992), N.D.Ohio No. 1:92 CV 1916, in which Rossborough Manufacturing Company challenged the constitutionality of S.B. No. 192. Roberts and Stump, as well as others, intervened as plaintiffs in *Rossborough.* On October 3, 1995, the claims of all plaintiffs were dismissed for failure to state a claim for which relief can be granted and lack of subject matter jurisdiction. An appeal was filed, and the appeal remains pending in the Sixth Circuit Court of Appeals.

{¶ 4}  With regard to the specific appellants in the present case, Roberts was injured on September 3, 1986, when a portion of his left hand was amputated by a

saw while at his place of employment, Rhodes Industries, Inc. ("Rhodes"), in Avon Lake, Ohio. The safety guard for the saw had allegedly been removed by Rhodes. In 1987, Roberts filed a complaint in the Lorain County Common Pleas Court against Rhodes for an intentional tort pursuant to former R.C. 4121.80, and the trial court found that Rhodes was liable for an intentional tort. On October 6, 1989, Roberts filed an application for a damage award with the commission. While the matter was still pending, on August 27, 1991, the Ohio Supreme Court decided *Brady*. The commission thus determined that it no longer had the authority to pay claims from the ITF pursuant to R.C. 4121.80.

{¶ 5} On September 27, 1991, Roberts filed an action in the Lorain County Common Pleas Court against Rhodes seeking a determination of damages as a result of the earlier determination of liability. This action was placed on the inactive docket, and the liability determination was never reduced to damages. On August 28, 1992, Roberts filed a complaint in the Court of Claims against the Treasurer, commission, and the bureau seeking a judgment declaring that he had a valid, vested right to a portion of the ITF and requesting a determination and payment of damages as a result of the intentional tort of Rhodes. In November 1992, the parties filed cross-motions for summary judgment. The court ordered a stay due to the proceedings in *Rossborough,* in which Roberts had intervened. On August 31, 2000, the trial court lifted the stay and denied the motions for summary judgment. In March 2001, both parties again filed motions for summary judgment, and on April 13, 2001, the trial court granted summary judgment in favor of the Treasurer, commission, and the bureau. Roberts appeals from this judgment.

{¶ 6} Larry Moyer was an employee of Butcher & Son, which is owned by appellant Butcher. On March 29, 1989, Moyer was killed by an explosion while working on the premises of Butcher & Son. In March 1990, Moyer's estate filed a complaint against Butcher & Son claiming that Moyer's death was the result of an intentional tort. After *Brady* was determined on August 27, 1991, the state refused to process intentional tort claims, leaving Butcher exposed to a judgment against his company. Butcher then entered into a settlement with Moyer's family in August 1992. On August 9, 1993, Butcher filed a complaint against the state, commission, and the bureau in the Court of Claims, seeking reimbursement of funds expended in the settlement and attorney fees incurred in defending the intentional tort claim filed by Moyer's estate. On September 13, 1993, the action was stayed pending the outcome of *Rossborough.* The Court of Claims lifted the stay on December 29, 2000, and in March 2001, the parties filed cross-motions for summary judgment. On April 13, 2001, the Court of Claims granted summary judgment in favor of the state, commission, and the bureau. Butcher appeals from this judgment.

{¶ 7}   On April 29, 1988, Stump was injured while performing work pursuant to his employment with Industrial Steeplejack Co. ("ISJ"). On April 12, 1989, Stump filed an intentional tort lawsuit in Cuyahoga County Common Pleas Court against ISJ. On May 21, 1991, he received a liability judgment against ISJ. The case was appealed, but while pending on appeal, *Brady* was decided.   The Cuyahoga County Court of Appeals remanded the matter to the trial court, finding that because R.C. 4121.80 had been found unconstitutional in *Brady*, judgment on the issue of liability only without determining damages was not a final order.   Upon remand, a damages hearing was held by the common pleas court, and Stump was awarded damages in the principal amount of $1,026,967.60 against ISJ. The judgment was affirmed in *Stump v. Indus. Steeplejack Co.* (1995), 104 Ohio App.3d 86, 661 N.E.2d 212.

{¶ 8}   On December 16, 1991, during the pendency of the first appeal in the Cuyahoga County case, Stump filed an action in the Court of Claims against the Treasurer, commission, and the bureau, alleging that he had an interest in the ITF. On January 2, 1992, a stay was ordered during the pendency of *Rossborough*, in which Stump had intervened.   The stay was vacated on September 26, 2000, and the parties filed cross-motions for summary judgment in March 2001. On April 13, 2001, the court granted summary judgment in favor of the Treasurer, commission, and the bureau.   Stump appeals this judgment.

{¶ 9}   Roberts asserts the following assignments of error:

{¶ 10}   "Assignment of Error # 1: The trial court erred in granting the Defendant's Motion for Summary Judgment.

{¶ 11}   "Assignment of Error # 2: The trial court erred in denying the Plaintiff's Motion for Summary Judgment."

{¶ 12}   Stump asserts the following assignment of error:

{¶ 13}   "Assignment of Error: The trial court erred in granting the Defendants' Cross–Motion for Summary Judgment and in denying the Plaintiff's Cross–Motion for Summary Judgment."

{¶ 14}   Butcher asserts the following assignments of error:

{¶ 15}   "Assignment of Error Number One

{¶ 16}   "The lower court erred in granting defendants-appellees' motion for summary judgment as genuine issues of material fact were in existence as to the state of Ohio's breach of its agreement with appellant and its inequitable denial of plaintiff–appellants' claim for insurance benefits.

{¶ 17}   "Assignment of Error Number Two

{¶ 18} "The lower court erred in retroactively applying subsequent case law as such retroactive application is not mandated under Ohio law and the result has been a manifest injustice."

{¶ 19} Roberts's, Butcher's, and Stump's assignments of error assert that the trial court erred granting summary judgment. Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating as to the absence of genuine issues of material fact essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 20} Roberts's first and second assignments of error and Stump's assignment of error are related and will be addressed together. Roberts and Stump argue that the decision in *Brady* should not be applied retrospectively. A decision overruling a former statute as being unconstitutional is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467; *Shaffer v. Frontrunner, Inc.* (1990), 57 Ohio App.3d 18, 20, 566 N.E.2d 193; *Anello v. Hufziger* (1988), 48 Ohio App.3d 28, 547 N.E.2d 1220. This general rule has been applied in cases where the Supreme Court is not overruling one of its former decisions but interpreting a statute. *Anello, supra.* Thus, once a statute has been found unconstitutional, it no longer applies to cases pending thereunder. *Grandillo v. Montesclaros* (2000), 137 Ohio App.3d 691, 697, 739 N.E.2d 863. An unconstitutional statute is not a law, confers no rights, imposes no duties, affords no protection, creates no office, and, in legal contemplation, is as inoperative as though it had never been passed. *Primes v. Tyler*

(1975), 43 Ohio St.2d 195, 196, 72 O.O.2d 112, 331 N.E.2d 723, quoting *Norton v. Shelby Cty.* (1886), 118 U.S. 425, 442, 6 S.Ct. 1121, 1125, 30 L.Ed. 178. If the entire enactment is unconstitutional, it is inoperative, thereby leaving the former law in full force and effect. *McClain v. All States Life Ins. Co.* (1948), 82 Ohio App. 354, 358, 38 O.O. 37, 80 N.E.2d 815.

{¶ 21} However, the Ohio Supreme Court has carved out exceptions to this rule: in those instances in which a court expressly indicates that its decision is to apply only prospectively, see *Lakeside Ave. L.P. v. Cuyahoga Cty. Bd. of Revision* (1999), 85 Ohio St.3d 125, 127, 707 N.E.2d 472; *State ex rel. Bosch v. Indus. Comm.* (1982), 1 Ohio St.3d 94, 98, 1 OBR 130, 438 N.E.2d 415; or in those cases in which contractual rights have arisen or a party has acquired vested rights under prior law. See *Peerless Elec. Co.,* supra, at 210, 57 O.O. 411, 129 N.E.2d 467; see, also, *Cartwright v. The Maryland Ins. Group* (1995), 101 Ohio App.3d 439, 443, 655 N.E.2d 827; *King v. Safeco Ins. Co.* (1990), 66 Ohio App.3d 157, 161–163, 583 N.E.2d 1051.

{¶ 22} In the present case, Roberts and Stump contend that they have acquired vested rights under R.C. 4121.80, and, thus, *Brady* could not be applied retroactively as to preclude their claim under R.C. 4121.80. However, a right does not vest unless it constitutes more than a "mere expectation or interest based upon an anticipated continuance of existing law." *In re Emery* (1978), 59 Ohio App.2d 7, 11, 13 O.O.3d 44, 391 N.E.2d 746, citing *Moore v. Bur. of Unemp. Comp.* (1943), 73 Ohio App. 362, 29 O.O. 75, 56 N.E.2d 520. Further, a right does not vest when it is "dependent for its existence upon the action or inaction of another." *Emery,* citing *Hatch v. Tipton* (1936), 131 Ohio St. 364, 6 O.O. 68, 2 N.E.2d 875. We find that Roberts and Stump did not establish a vested right in the ITF and that the liability judgments against their employers alone did not establish such a vested right.

{¶ 23} Roberts's and Stump's claimed right to recover damages from the ITF could not be said to have vested until, at the earliest, a damages hearing was held by the commission and an award was issued by the commission, as required by former R.C. 4121.80. In Roberts' case, after his employer was found liable by a trial court, he filed an application for damages award with the commission on October 6, 1989. However, the matter was still pending when the Ohio Supreme Court decided *Brady* on August 27, 1991, and the commission never made a damages determination. In Stump's case, after he received a liability judgment against ISJ on May 21, 1991, the case was appealed, and *Brady* was decided during the pendency of the appeal. Stump's damages award against ISJ upon remand was eventually affirmed on appeal in 1995.

{¶ 24} Thus, the only judgments Roberts and Stump obtained were mere liability judgments against their employers. Although Stump also obtained a damages judgment, such judgment was rendered against only ISJ, not any state agency, and was issued by a trial court, not by the commission, as specifically required by R.C. 4121.80. Roberts's and Stump's potential for an award from the ITF was based on their expectation of the continued existence of R.C. 4121.80 as good law at the time they acquired the liability judgments at the trial court level, and the existence of their rights to monies from the ITF remained dependent upon the further action of the commission. Both required the final step of obtaining a determination from the commission on damages, but the Ohio Supreme Court's decision in *Brady* preempted and terminated their pursuit of such. As the Ohio Supreme Court once stated, "* * * all who assume the validity of legislation do so at their peril." *Thomas v. State ex rel. Gilbert* (1907), 76 Ohio St. 341, 362, 81 N.E. 437. Given these facts, it cannot be said that Roberts or Stump had a vested right to receive damage awards from the ITF. Consequently, *Peerless* does not apply to render the apparent retroactivity of *Brady* void, and *Brady* would apply to bar Roberts's and Stump's claims.

{¶ 25} Both Roberts and Stump also argue that they have been denied the opportunity to pursue independent recovery from their employers. However, this is clearly not the case. Both did, indeed, obtain liability judgments against their respective employers. In Roberts's case, a trial court found his employer, Rhodes, liable for an intentional tort. After *Brady*, Roberts filed an action seeking a damages determination based upon the liability finding, but this action was placed on the inactive docket, and the damages have never been determined. Unfortunately, Roberts believes that Rhodes is no longer in business. Stump also has a liability and damages judgment against his employer, ISJ; however, ISJ is also apparently unable to satisfy the judgment awarded by the trial court due to ISJ's insolvency. Thus, it is clear that neither Roberts nor Stump has lost any right to pursue a remedy as a result of *Brady*, they retain their common-law rights and remedies, and, in fact, they both have liability judgments against their employers. Though unfortunate that their employers are unable to satisfy a judgment, this does not strengthen their legal position in the present case. For the foregoing reasons, we find that the Court of Claims properly granted summary judgment against Stump and Roberts on this issue.

{¶ 26} Roberts and Stump next argue, alternatively, that even if they are not entitled to recover from the ITF, they are entitled to recovery under S.B. No. 192. Section 5, the portion of S.B. No. 192 under which they claim entitlement to recovery, provides that the bureau can only distribute (1) attorney fees not to exceed $1,000,000 for services provided to employers under former R.C. 4121.80; (2) administrative fees not to exceed $50,000; and:

{¶ 27} "From the funds remaining in the Workers' Compensation Intentional Tort Disbursement Fund, the Bureau shall prorate a credit for the rating year beginning July 1, 1993, to the administrative assessment of each employer that has made payments to the Intentional Tort Fund by the amount of all such payments made by each such employer, provided that in computing the amount of the prorated credit due to each employer, *the Bureau shall reduce the credit to the individual employer by the amount paid or to be paid by the Industrial Commission or Bureau either in employer attorney's fees or as an award on behalf of such an employer brought under former section 4121.80 of the Revised Code.*" (Emphasis added.)

{¶ 28}    Roberts and Stump contend that the allowance of monies "to be paid" (connoting the future), when read in conjunction with "an award on behalf of such an employer brought under former section 4121.80 of the Revised Code," can mean only that the General Assembly desired employees to recover from the ITF monies for future intentional tort damages awards made after *Brady* found R.C. 4121.80 unconstitutional.

{¶ 29}    Appellees set forth their own interpretation of this passage.    Though somewhat difficult to articulate, generally, appellees argue that "paid" refers to both of the subsequent phrases "attorney fees" (i.e., fees that were paid before *Brady*) as well as "an award on behalf of such an employer brought under former section 4121.80 of the Revised Code" (i.e., liability awards that were reduced to damages by the commission and paid prior to *Brady*); while "to be paid" refers only to attorney fees billed by October 27, 1991, for legal services already rendered but not yet paid, and not to damages awards.    Appellees insist that the General Assembly used a "kind of economy of expression" based upon "everyday usage," setting forth the following hypothetical business policy as an illustration of their point:

{¶ 30}    "For employees and clients who travel on business past 5:00 p.m. to meetings, the company will pay parking costs and salary at the overtime rate of time and a half."

{¶ 31}    Appellees explain that in their illustration it is clear by context that both employees and clients will be paid by the company for parking costs while only employees will obviously receive salary at time-and-a-half.    Likewise, appellees argue that when read in context, Section 5 utilizes this same informal composition tactic to convey that "to be paid" refers to only one of the subsequent items (attorney fees) and "paid" refers to both subsequent items (attorney fees and awards brought under former R.C. 4121.80).

{¶ 32}    This passage in Section 5 is not a model of clarity, particularly given its unfortunate compound structure and ambiguous use of "either" and

"or." The Ohio Supreme Court has explained that a court's primary concern when interpreting statutes must be to determine the legislative intent behind the statute, which is done by focusing on the language in the statute and the legislative purpose. *Morgan v. Ohio Adult Parole Auth.* (1994), 68 Ohio St.3d 344, 346, 626 N.E.2d 939. However, a trial court may not "ignore the plain and unambiguous language of a statute under the guise of either statutory interpretation or liberal construction; * * * the courts must give effect to the words utilized." Id. at 347, 626 N.E.2d 939. The words in the statute must be considered in their usual, normal, or customary meaning. Id., citing *State v. S.R.* (1992), 63 Ohio St.3d 590, 595, 589 N.E.2d 1319.

{¶ 33} What the General Assembly meant to communicate with this sentence is difficult to glean and can only be surmised by this court. As a court of law put in the position of having to unravel this semantic mystery, we believe that neither Roberts' and Stump's nor appellees' interpretations are compelling. With regard to appellees' belief that "paid" refers to both previously paid damages awards and attorney fees, while "to be paid" refers only to attorney fees, this is simply too far a stretch. If the General Assembly had meant to effectuate the interpretation that appellees argue to this court, it could have very easily stated such without the complicated twist and necessary blind leap-of-faith that appellees urge. We find appellees' interpretation unpersuasive.

{¶ 34} With regard to Roberts' and Stump's interpretation of Section 5, it is simply not logical and fraught with several problems. Their reading would again put in place the precise scheme that the Ohio Supreme Court in *Brady* already stated was unconstitutional and the same scheme for which S.B. No. 192 was effectuated to fix and wind down. Roberts and Stump counter that statutes are presumed to be constitutional, and S.B. No. 192 should be interpreted as being constitutional, citing *Adamsky v. Buckeye Local School Dist.* (1995), 73 Ohio St.3d 360, 653 N.E.2d 212. However, we do not question the constitutionality of S.B. No. 192 here. Rather, it is Roberts' and Stump's interpretation we question and find unconvincing. Further, nowhere does Section 5 provide for employees, such as Roberts and Stump, to be paid any amounts; it mentions "an award" only for use as a computational reduction from the credit due each employer. Also, former R.C. 4121.80 specifically defined the precise procedure to be followed in obtaining monies from the ITF, placed a one million dollar limit on awards, and allowed only monies that are available under workers' compensation, which does not allow punitive damages. To the contrary, as appellees point out, S.B. No. 192 contains no procedure whatsoever to explain how claimants would be paid from the fund, places no dollar limits on damages awards, and does not include language limiting punitive damages. It is unlikely that the legislature would have executed S.B. No. 192 with such obvious and sloppy omissions and without

provisions that would be absolutely essential to its effective operation. Though we believe the passage is somewhat inartfully drafted, we cannot accept that such crucial and colossal omissions could be a mere product of inartful draftsmanship. Moreover, as appellees also point out, S.B. No. 192 provides only $50,000 to administer Section 5. As Section 5 contains no time limit for its administration, Roberts's and Stump's reading would suggest that the bureau could and would continue to administer the former unconstitutional scheme contained in R.C. 4121.80 on a mere $50,000 budget for an indeterminate time, presumably until at least those cases that were "in the pipeline" at the time of *Brady* wind through the entire procedure in former R.C. 4121.80.

{¶ 35} In addition, the specific procedure in R.C. 4121.80 required that the commission determine an employee's damages after a hearing before he or she was entitled to payment from the ITF. Neither Stump nor Roberts has had a damages award determined by the commission, and S.B. No. 192 contains no language that would "legitimatize" damages awarded via any other procedure, particularly from a trial court. Thus, even if we were to accept Roberts's and Stump's interpretation, neither Roberts nor Stump has any recognizable award entitling them to the amounts "to be paid" under R.C. 4121.80, as their damages were not awarded pursuant to the procedures outlined in R.C. 4121.80.

{¶ 36} Therefore, we are left to furnish our own interpretation. We believe that the simplest and plainest reading of Section 5 contemplates "to be paid" to refer to both attorney fees and damages awards under R.C. 4121.80. However, where we depart from Roberts and Stump is that we find the only type of "award" that is "to be paid" in the future from the fund is damages awards that had already been determined by the commission at the time *Brady* was decided but had not yet been actually paid out to the employee. When *Brady* was determined, it is conceivable that the commission had recently awarded damages to an employee in a pending case, but had yet to make payment on that award. Heeding the very strict view argued by appellees throughout this litigation, the commission's duty to pay would have ceased immediately upon the *Brady* decision, thereby conceivably denying the employee payment from the fund even though an actual award amount had already been determined by the commission.

{¶ 37} Admittedly, our interpretation has at least two major weaknesses itself. We can assume that either (1) the commission, in fact, already paid the awards in any such cases, or (2) there existed no type of case as described above when *Brady* was released. We make such presumptions based upon Butcher's representation that only five related cases have been filed in the Court of Claims, and this court is itself aware of four of them, none of which falls under this peculiar category. Our interpretation not only appears to be the intention of the

legislature by the words used, but would also appear to be the more reasonable way to reconcile several problems that arise when following the interpretations propounded by appellees and Roberts and Stump. We do not believe that this interpretation reaches an absurd result. Accordingly, we find that Roberts and Stump can raise no genuine issue of material fact that they are entitled to payment pursuant to S.B. No. 192.

{¶ 38} Stump makes additional arguments claiming that equity requires that he be paid his damages award from the ITF. Stump's arguments assume that he has a vested right in the fund, which we have already determined above he does not. Notwithstanding, he first claims that the sums he and Roberts are owed from the ITF can easily be paid from the interest alone that has accrued since *Brady*. When *Brady* was decided in 1991, the ITF held approximately thirty million dollars and now holds over double that amount as a result of accrued interest. Stump claims that only the principal thirty million dollars will have to be distributed under S.B. No. 192 and not the accrued interest of approximately thirty million dollars, and even the thirty million dollar principal will not have to be disbursed in whole because it is likely that hundreds of employers that contributed to the ITF originally have gone out of business since 1991. Thus, Stump's equity argument apparently is that because his claim is so small and so much interest has accrued that will not have to be disbursed, equity should allow him to claim a relatively small portion of that interest.

{¶ 39} However, the additional thirty million dollars in interest that has accrued since 1991 is presumably being compounded as part of the original principal and will also be available for disbursement whenever S.B. No. 192 is enforced, minus, of course, one million dollars for attorney fee disbursements and $50,000 for administrative expenses. Stump cites nothing in S.B. No. 192 to support his belief that the interest will be held separately and not be disbursed along with the original principal. To the contrary, S.B. No. 192 prohibits the use of the ITF monies for anything other than as provided in Section 5 and provides for a pro-rata distribution of all remaining funds to those employers who paid into the fund. Because the distribution is pro-rata, it appears as though each qualifying employer will receive a proportionate amount of the total remaining funds and will not merely be refunded the actual premiums previously paid into the fund. Thus, no matter how much of the fund is remaining after attorney fees and administrative expenses, that whole amount will be distributed pro-rata. Stump's argument in this respect fails.

{¶ 40} Stump's other equitable argument is that the result of leaving vested injured employees without a source of recovery when they followed the mandates of the law in effect at the time is unjust and inequitable. However, we have already found that neither Stump nor Roberts had a vested interest in the ITF.

We also explained above that Roberts and Stump did have a source of recovery, but, unfortunately, both of their employers are no longer able to satisfy any judgment rendered by a court of common pleas. Thus, we find no merit to this argument.

{¶ 41} Given our determinations above, Roberts's and Stump's argument against the application of res judicata is moot. Therefore, Roberts's first and second assignments of error and Stump's assignment of error are overruled.

{¶ 42} We will address Butcher's first and second assignments of error together. Butcher argues in his first assignment of error that equity should interpose to provide indemnification from the ITF because he complied entirely with the terms of R.C. 4121.80. Butcher argues in his second assignment of error that *Brady* should not be applied retrospectively to his particular circumstances because he was "forced" to enter into the August 1992 settlement with the estate of the deceased employee after *Brady* left his company without intentional tort liability insurance and open to a potentially large judgment.

{¶ 43} We find a number of cases helpful in resolving the issues raised by Butcher. In *Taylor v. Triple A in the U.S.A.* (1995), 107 Ohio App.3d 14, 667 N.E.2d 999, the defendant corporation was sued by an employee for intentional tort. A liability trial was conducted in March 1990, at which the court found the company liable for intentional tort. The trial court's determination was upheld on appeal. See *Taylor v. Triple A in the U.S.A.* (July 1, 1991), Belmont App. No. 90–B–13, 1991 WL 142806. The company appealed to the Ohio Supreme Court, but prior to filing the memorandum in support of jurisdiction, *Brady* was decided. The Ohio Supreme Court granted appellee's motion to dismiss, and the court remanded the matter to the trial court. Upon remand, the trial court held a damages hearing, and the employee was awarded $50,000 for compensatory damages, $30,000 for punitive damages, and approximately $16,500 for attorney fees. The company appealed, asserting in one of its assignments of error that the trial court erred by ignoring the company's immunity as a complying employer under the ITF. The company claimed that it should be permitted to avail itself of the former statute's protection providing immunity from payment of attorney fees, costs, or other damages, because it was a fully complying employer that had paid its premiums into the ITF as required by R.C. 4121.80. Rejecting this argument, the appellate court found that the company was "not entitled to immunity under a statute which has been declared unconstitutional." *Taylor* at 19, 667 N.E.2d 999. The court then went on to reject the company's argument that it had a property interest in indemnification by the ITF for damages, attorney fees, and costs arising from the matter.

{¶ 44} In addition, numerous cases have found that the effect of *Brady* was to treat R.C. 4121.80 as if it had never existed, and that cases previously filed under

R.C. 4121.80 and pending when *Brady* was decided must be treated under former law. See, e.g., *Keith v. Spectrum Sportswear, Inc.* (1997), 120 Ohio App.3d 30, 32, 696 N.E.2d 637 (finding *Brady* applies retrospectively and stating: "Once found unconstitutional, a statute can no longer apply to cases pending under it"); *Malatesta v. Sharon Twp. Trustees* (1993), 87 Ohio App.3d 719, 722–723, 622 N.E.2d 1163, following *Anderson v. Brush–Wellman, Inc.* (1991), 77 Ohio App.3d 657, 661, 603 N.E.2d 284 (because *Brady* was decided during the pendency of the matter, it eliminated the employee's cause of action under R.C. 4121.80, leaving the employee with only the common-law action); *Sponagle v. USAir Group, Inc.* (1992), 81 Ohio App.3d 789, 792, 612 N.E.2d 395 (*Brady* applied retrospectively to case pending at the time of decision so as to render statute of limitations in R.C. 4121.80 a nullity); *Bare v. Warren Consol. Industries* (June 18, 1999), Trumbull App. No. 98–T–0133, 1999 WL 417968, citing *Keith,* supra; *Welton v. Lincoln Elec. Co.* (Sept. 19, 1997), Lawrence App. No. 97CA5, 1997 WL 580620, citing *Keith,* supra; *Patton v. J & H Reinforcing & Structural Erectors, Inc.* (Dec. 9, 1994), Scioto App. No. 93–CA–2194, 1994 WL 693929 (*Brady* applied retrospectively to intentional tort action pending at time of *Brady;* thus, statute of limitations in effect prior to R.C. 4121.80 controls); *Domonkas v. Firestone Sparkle, Inc.* (June 29, 1994), Summit App. No. 16232, 1994 WL 286077 (*Brady* retroactive to the date of employee's injuries); *Cooper v. SPS Technologies, Inc.* (July 15, 1993), Cuyahoga App. No. 62956, 1993 WL 266940; *Koziol v. Quality Stamping Products* (Mar. 5, 1992), Cuyahoga App. No. 59941, 1992 WL 41849 (application of *Brady* to a case that was pending appeal at the time the decision came down from the Ohio Supreme Court).

{¶ 45} We also note that while not factually or procedurally on all fours with the present case, the Ohio Supreme Court's determination in *State ex rel. Chrysler Motors Corp. v. Mayfield* (1992), 64 Ohio St.3d 505, 597 N.E.2d 118, is useful. In *State ex rel. Chrysler Motors Corp. v. Mayfield* (Jan 31, 1991), Franklin App. No. 89AP–1203, 1991 WL 10915, Chrysler requested a writ of mandamus ordering the commission to reimburse it from the ITF for the costs of defending and settling an action brought against it by the estate of a deceased employee. We denied the writ and found that because R.C. 4121.80 requires a liability determination by a trial court and does not provide for settlements, Chrysler did not comply with the statute. After briefs were filed with the Ohio Supreme Court, *Brady* was decided. The Ohio Supreme Court then affirmed our decision, finding that *Brady* "invalidated R.C. 4121.80 in its entirety, negating any right to reimbursement of settlement money and attorney fees in this case." *Chrysler Motors Corp.* at 505, 597 N.E.2d 118. Thus, it appears that the Ohio Supreme Court found that *Brady* terminated any rights for disbursements to an employer from the ITF. See, also, *Whirlpool Corp. v. Indus. Comm.* (1991), 61 Ohio St.3d 719, 576 N.E.2d 790 (after this court determined that an employer

could not receive reimbursement from the state for attorney fees incurred in defending intentional tort claim, the Ohio Supreme Court affirmed on a different ground, citing, without comment, the intervening decision in *Brady*).

{¶ 46} In the present case, we find the holding in *Taylor* and the other cited cases persuasive. As in *Taylor*, we find that Butcher cannot seek to invoke the intentional tort immunity provided under R.C. 4121.80, which has been declared unconstitutional, despite the fact that he paid premiums into the fund. Butcher, as in *Taylor*, also cannot claim any property interest in indemnification by the ITF for damages, attorney fees, and costs arising out of the matter, as the statute is no longer operable. Further, based upon the multitude of cases regarding the issue, we find that the *Brady* decision declaring R.C. 4121.80 unconstitutional was retrospective in its operation so as to preclude any sort of recovery by Butcher from the ITF.

{¶ 47} Having found such, we make one further comment regarding Butcher's plea for recovery based upon equity. He requests that this court indemnify him for the settlement because *Brady* pulled the proverbial rug out from under him during the pendency of his intentional tort trial. Indeed, only a corpse would be unable to see the inequity brought by *Brady* under the specific circumstances as occurred in the present case. We view Butcher's equitable position, as an employer, different from the position of Stump and Roberts, as employees. After *Brady*, Stump and Roberts could still potentially obtain damages for an intentional tort, albeit directly from their employers instead of the ITF. However, Butcher was prohibited from retaining liability insurance, and then, with no opportunity to protect himself or his company, *Brady* opened him up to liability while in the middle of a pending intentional tort action. Butcher was left with no cover and no subsequent remedy.

{¶ 48} However, while we agree that the result of *Brady* upon cases pending at the time of its rendering was unfair, we are constrained by the bulk of cases finding that *Brady* applies retrospectively to extinguish employer immunity for intentional tort claims brought by employees. Butcher does retain his right to appeal to the Supreme Court of Ohio, and that court may desire to address this situation. Thus, it is with some reluctance that we find that Butcher failed to demonstrate any genuine issues of material fact. Butcher's first and second assignments of error are overruled.

{¶ 49} Accordingly, we find that the trial court did not err in granting the motions for summary judgment. Roberts's, Butcher's, and Stump's assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.

Judgment affirmed.

Tyack and Deshler, JJ., concur.