WILSON, Appellee,

v.

AC&S, INC., et al., Appellants.

[Cite as *Wilson v. AC&S, Inc.,* 169 Ohio App.3d 720, 2006-Ohio-6704.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2006–03–056.

Decided Dec. 18, 2006.

722

724

Price Waicukauski & Riley, L.L.C., William N. Riley, and Christopher Moeller, for appellee.

Motley, Rice, L.L.C., John J. McConnell, and Vincent L. Greene, for appellee.

Vorys, Sater, Seymour & Pease, L.L.P., Richard D. Schuster, and Nina I Webb–Lawton; Rosemary D. Welsh, for appellants 3M Company, Oglebay Norton Company, Certainteed Corporation, and Union Carbide.

Oldham & Dowling and Reginald S. Kramer, for appellant CBS Corporation.

Baker & Hostetler L.L.P., Robin E. Harvey, and Angela M. Hayden, for appellants Uniroyal, Inc., and Georgia–Pacific.

Gallagher Sharp, Kevin C. Alexanderson, John A. Valenti, and Colleen Mountcastle, for appellant Ingersoll–Rand Corporation.

Buckley King, L.P.A., and Jeffrey W. Ruple, for appellant Cleaver–Brooks.

Sutter, O'Connell & Farchione Co., L.P.A., Matthew C. O'Connell, and Douglas R. Simek, for appellants Riley Stoker Corporation and Garlock Sealing Technologies, L.L.C.

McCarthy, Lebit, Crystal & Liffman, Co., L.P.A., and David A. Schaefer, for appellant Rapid American Corporation.

Jim Petro, Attorney General, and Holly J. Hunt, Assistant Attorney General, for amicus curiae Ohio Attorney General Jim Petro.

Bunda, Stutz & DeWitt, and Robert Bunda, for amicus curiae Owens–Illinois, Inc.

---

YOUNG, Judge.

{¶ 1} This matter is before us on an appeal [1] by numerous appellants who are challenging a decision of the Butler County Court of Common Pleas finding that the asbestos claim of plaintiff-appellee, Barbara Wilson, individually and as personal representative of the estate of Chester Wilson, is governed by the law as it existed prior to the effective date of 2004 Am.Sub.H.B. No. 292 ("H.B. 292").

{¶ 2} From 1964 to his retirement in April 2000, Chester Wilson was employed by A.K. Steel Corporation, formerly known as Armco Steel Corporation, located in Butler County, Ohio. Mr. Wilson worked in various jobs around the plant, including the position of furnace tender. On August 4, 2000, Mr. Wilson, who was a two-or-three-pack-a-day smoker, was diagnosed with lung cancer.

---

1. This matter is sua sponte removed from the accelerated calendar.

{¶ 3} On December 14, 2001, Mr. Wilson filed a complaint against a number of companies (hereinafter "appellants" [2]) that have been engaged in the mining, processing, manufacturing, sale, and distribution of asbestos or asbestos-containing products or machinery. Mr. Wilson alleged that he had been exposed to asbestos or asbestos-containing products or machinery in his occupation and that appellants were responsible for his lung disease and related physical ailments from which he suffered.

{¶ 4} On April 15, 2003, Mr. Wilson died of lung cancer. Thereafter, Mr. Wilson's wife, Barbara Wilson, was substituted as the party in interest for the deceased Mr. Wilson.

{¶ 5} On September 2, 2004, H.B. 292 went into effect. The key provisions of H.B. 292 are codified in R.C. 2307.91 to 2307.98. Among other things, these provisions require a plaintiff bringing an asbestos claim to make a prima facie showing that the exposed person has a physical impairment resulting from a medical condition and that the person's exposure to asbestos was a substantial contributing factor to the medical condition. See R.C. 2307.92(B) through (D) and 2307.93(A)(1).

{¶ 6} In March 2005, appellee filed a motion, with several exhibits attached, seeking to establish the prima facie showing required under H.B. 292. Appellants filed a memorandum in opposition, asserting that appellee's proffered evidence failed to establish a sufficient prima facie showing to allow her case to proceed and requesting that appellee's case be administratively dismissed.

{¶ 7} On August 30, 2005, the trial court held a hearing on the parties' various assertions regarding appellee's asbestos claim. At the hearing, appellee acknowledged that her evidence was insufficient to establish the prima facie showing required under H.B. 292. Nevertheless, appellee argued that H.B. 292 should not apply to her asbestos claim because applying the new law to her claim would amount to an unconstitutional retroactive application of the law.

{¶ 8} On February 24, 2006, the trial court issued an order holding that the retroactive application of H.B. 292 was substantive rather than merely remedial in its effect and therefore violates Section 28, Article II of the Ohio Constitution. Consequently, the trial court announced its intention to "adjudicate substantive

---

2. The defendants-appellants in this case are 3M Company, Oglebay Norton Company, Certainteed Corporation, Union Carbide, CBS Corporation, Ingersoll–Rand Corporation, Uniroyal, Inc., Georgia–Pacific Corporation, Cleaver–Brooks, Riley Stoker Corporation, Garlock Sealing Technologies, L.L.C., and Rapid American Corporation. The companies named as defendants in Mr. Wilson's original complaint included these plus a number of other companies who were eventually dismissed as defendants to this action. For ease of reference, we shall refer to all of these defendants as "appellants," even though several of them have been dismissed from this action and are not parties to this appeal.

issues in asbestos cases filed before September 2, 2004 according to the law as it existed prior to [H.B. 292]'s enactment, and [to] administratively dismiss, without prejudice, any claim that fails to meet the requisite evidentiary threshold." The trial court journalized its order on March 7, 2006.

{¶ 9} Appellants now appeal from the trial court's March 7, 2006 order[3] and assign the following as error:

{¶ 10} Assignment of Error No. 1:

{¶ 11} "The trial court erred in interpreting R.C. 2307.92 and concluding that the statute would violate the Ohio Constitution."

{¶ 12} Appellants argue that the trial court erred in concluding that retrospectively applying certain provisions in H.B. 292 to this case would violate the ban on retroactive legislation in Section 28, Article II of the Ohio Constitution. We agree with this argument.

# I

{¶ 13} OVERVIEW OF OHIO'S PERSONAL-INJURY ASBESTOS LITIGATION SYSTEM—PAST and PRESENT

## A

{¶ 14} *Ohio's Personal–Injury Asbestos Litigation System—Pre–H.B. 292*

{¶ 15} In 1980, the General Assembly amended R.C. 2305.10 to state when a cause of action for an asbestos-related personal injury arises or accrues under Ohio law. 138 Ohio Laws, Part II, 3412. R.C. 2305.10(B)(5) now states:

{¶ 16} "[A] cause of action for bodily injury caused by exposure to asbestos accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first."

{¶ 17} Prior to September 2, 2004, the General Assembly had never defined the terms "bodily injury caused by exposure to asbestos" or "competent medical authority."

---

3. This court initially dismissed appellants' appeal on the grounds that the order appealed from was not a final, appealable order. However, upon appellants' application for reconsideration, we reinstated appellants' appeal on the grounds that the entry appealed from is a provisional remedy as contemplated pursuant to R.C. 2307.93(A)(3) and that because the decision appealed from directly interprets R.C. 2307.93(A)(3), it is a final order pursuant to R.C. 2505.02.

**B**

{¶ 18} *Ohio's Asbestos Litigation Crisis*

{¶ 19} Asbestos claims have created a vastly increased amount of litigation in the state and federal courts in this country, which the United States Supreme Court has characterized as "an elephantine mass" of cases. H.B. 292, Section 3(A); *Ortiz v. Fibreboard Corp.* (1999), 527 U.S. 815, 821, 119 S.Ct. 2295, 144 L.Ed.2d 715.

{¶ 20} The extraordinary volume of nonmalignant asbestos cases continues to strain federal and state courts. H.B. 292, Section 3(A). Over 600,000 people in the United States have filed asbestos claims for asbestos-related personal injuries through the end of 2000, and it is estimated that there are currently more than 200,000 active asbestos cases in courts nationwide.

{¶ 21} One report suggests "that at best, only one-half of all claimants have come forward and at worst, only one-fifth have filed claims to date." Id. Another study estimates that $54 billion have already been spent on asbestos litigation. Id. Estimates of the total costs of all asbestos claims range from $200 to $265 billion. Id.

{¶ 22} Before 1998, Ohio, Mississippi, New York, West Virginia, and Texas accounted for nine per cent of all filings of asbestos claims. However, between 1998 and 2000, these same five states handled 66 percent of all asbestos filings. As a result, Ohio has now become a haven for asbestos claims and is one of the top five state-court venues for asbestos filings. Id.

{¶ 23} There are at least 35,000 asbestos personal-injury cases pending in Ohio state courts. Id. If the 233 Ohio state-court general jurisdictional judges started trying these asbestos cases today, each would have to try over 150 cases before retiring the current docket. H.B. 292, Section 3(A). That figure conservatively computes to at least 150 trial weeks, or more than three years per judge to retire the current docket. Id.

{¶ 24} "The current docket, however, continues to increase at an exponential rate." Id. For example, in 1999 there were approximately 12,800 pending asbestos cases in Cuyahoga County. Id. However, by the end of October 2003, there were over 39,000 pending asbestos cases. Id. Approximately 200 new asbestos cases are filed in Cuyahoga County every month. Id.

{¶ 25} Asbestos personal-injury litigation has already contributed to the bankruptcy of more than 70 companies nationwide, including nearly all manufacturers of asbestos textile and insulation products. Id. "At least five Ohio-based companies have been forced into bankruptcy because of an unending flood of asbestos cases brought by claimants who are not sick." Id.

{¶ 26} The General Assembly has recognized "that the vast majority of Ohio asbestos claims are filed by individuals who allege they have been exposed to asbestos and who have some physical sign of exposure to asbestos, but who do not suffer from an asbestos-related impairment." Id. Indeed, 89 percent of asbestos claims come from people who do not have cancer, and 66 to 90 percent of these noncancer claimants are not sick. Id. Furthermore, according to one study, 94 percent of the 52,900 asbestos claims filed in the year 2000 involved claimants who are not sick. Id.

{¶ 27} Tragically, plaintiffs with asbestos claims are receiving less than 43 cents on every dollar awarded, and 65 per cent of the compensation paid, thus far, has gone to claimants who are not sick. Id.

## C

{¶ 28} *Amended Substitute House Bill 292*

{¶ 29} H.B. 292 was signed into law on June 3, 2004, and took effect on September 2, 2004. The key portions of the law are codified in R.C. 2307.91 to 2307.98. The basic purpose of the law is to resolve this state's asbestos-litigation crisis.

## 1

{¶ 30} *Legislative Intent in Enacting H.B. 292*

{¶ 31} Section 3(B) of H.B. 292 states:

{¶ 32} "In enacting sections 2307.91 to 2307.98 of the Revised Code, it is the intent of the General Assembly to: (1) give priority to those asbestos claimants who can demonstrate actual physical harm or illness caused by exposure to asbestos; (2) fully preserve the rights of claimants who were exposed to asbestos to pursue compensation should those claimants become impaired in the future as a result of such exposure; (3) enhance the ability of the state's judicial systems and federal judicial systems to supervise and control litigation and asbestos-related bankruptcy proceedings; and (4) conserve the scarce resources of the defendants to allow compensation of cancer victims and others who are physically impaired by exposure to asbestos while securing the right to similar compensation for those who may suffer physical impairment in the future."

## 2

{¶ 33} *R.C. 2307.92: Prima Facie Showing of Minimum Medical Requirements*

{¶ 34} R.C. 2307.92 establishes the minimum medical requirements that a plaintiff with an asbestos claim must meet in order to maintain the action and

requires the plaintiff to make a prima facie showing of those minimum requirements. The provisions of R.C. 2307.92 categorize asbestos claimants into three distinct categories: (1) claimants who are advancing an asbestos claim based on "a non-malignant condition," R.C. 2307.92(B); (2) claimants who are advancing an asbestos claim based upon "lung cancer of an exposed person who is a smoker," R.C. 2307.92(C)(1); and (3) claimants who are advancing an asbestos claim that is based upon "a wrongful death * * * of an exposed person[.]" R.C. 2307.92(D)(1).

{¶ 35} The case sub judice involves a claimant, i.e., appellant, who is acting as the personal representative of her late husband, who was a smoker. Appellant claims that her late husband's lung cancer was caused by his exposure to asbestos. Appellant is also bringing a wrongful-death claim. Therefore, appellant's claims would be governed by R.C. 2307.92(C)(1) and (D)(1), assuming that the relevant provisions of H.B. 292 can be applied retroactively to this case.

{¶ 36} R.C. 2307.92(C)(1) prohibits any person from bringing or maintaining a tort action alleging an asbestos claim based upon lung cancer of an exposed person who is a smoker, in the absence of a prima facie showing, in the manner described in R.C. 2307.93(A), that the exposed person has a physical impairment, that the physical impairment is a result of a medical condition, and that the person's exposure to asbestos is a substantial contributing factor to the medical condition. The prima facie showing must include all of the following minimum requirements:

{¶ 37} "(a) A diagnosis by a competent medical authority that the exposed person has primary lung cancer and that exposure to asbestos is a substantial contributing factor to that cancer;

{¶ 38} "(b) Evidence that is sufficient to demonstrate that at least ten years have elapsed from the date of the exposed person's first exposure to asbestos until the date of diagnosis of the exposed person's primary lung cancer. * * *

{¶ 39} "(c) Either of the following:

{¶ 40} "(i) Evidence of the exposed person's substantial occupational exposure to asbestos;

{¶ 41} "(ii) Evidence of the exposed person's exposure to asbestos at least equal to 25 fiber per cc years as determined to a reasonable degree of scientific probability * * *."

{¶ 42} R.C. 2307.92(D)(1) requires a similar prima facie showing to be made by a claimant who is bringing or maintaining an asbestos claim that is based upon a wrongful death.

3

{¶ 43} *R.C. 2307.93: Filing of Prima Facie Evidence*

{¶ 44} R.C. 2307.93(A)(1) requires the plaintiff in an asbestos action to file, within 30 days after filing the complaint or other initial pleading, "a written report and supporting test results constituting prima-facie [sic] evidence of the exposed person's physical impairment that meets the minimum requirements specified in [R.C. 2307.92(B), (C), or (D) ], whichever is applicable." The defendant in the case has 120 days from the date the specified type of prima facie evidence is proffered to challenge the adequacy of that evidence. R.C. 2307.93(A)(1).

{¶ 45} If the defendant in an asbestos action challenges the adequacy of the prima facie evidence of the exposed person's physical impairment as provided in R.C. 2307.93(A)(1), the trial court, using the standard for resolving a motion for summary judgment, must determine whether the proffered prima facie evidence meets the minimum requirements specified in R.C. 2307.92(B), (C), or (D). R.C. 2307.93(B).

{¶ 46} If the trial court finds that the plaintiff failed to make the requisite prima facie showing, the court must administratively dismiss the plaintiff's claim without prejudice. R.C. 2307.93(C). Any plaintiff whose case has been administratively dismissed may move to reinstate his or her case if the plaintiff makes a prima facie showing that meets the requirements of R.C. 2307.92(B), (C), or (D). R.C. 2307.93(C).

{¶ 47} R.C. 2307.93(A)(2) provides that with respect to any asbestos claim that is pending on the effective date of the statute, the plaintiff must file the written report and supporting test results described in R.C. 2307.93(A)(1) within 120 days following the effective date of the statute. The trial court, upon plaintiff's motion and for good cause shown, may extend the 120–day period in which the written report and supporting test results must be filed.

4

{¶ 48} *The "Savings Clause" in R.C. 2307.93(A)(3)(b)*

{¶ 49} R.C. 2307.93(A)(3) contains a "savings clause," which provides that for any cause of action arising before the effective date of this section, the provisions set forth in R.C. 2307.92(B), (C), and (D) are to be applied unless the court finds that "[a] substantive right of a party to the case has been impaired" *and* that "that impairment is otherwise in violation of Section 28 of Article II of the Ohio Constitution." If the court makes both of those findings, it must apply the law that is in effect prior to the effective date of R.C. 2307.93. See R.C. 2307.93(A)(3)(b).

{¶ 50} If the court finds that the plaintiff has failed to provide sufficient evidence to support his or her cause of action under R.C. 2307.93(A)(3)(b), the court must administratively dismiss the plaintiff's claim without prejudice, and

with the court retaining jurisdiction over the case. R.C. 2307.93(A)(3)(c). Any plaintiff whose case has been administratively dismissed may move to reinstate the case if the plaintiff provides sufficient evidence to support the plaintiff's cause of action under the law that was in effect when the plaintiff's cause of action arose. Id.

5

{¶ 51} *H.B. 292's Definition of Key Phrases*

{¶ 52} H.B. 292 defines at least one phrase not previously defined by either the General Assembly or the Ohio Supreme Court, namely, "competent medical authority."

{¶ 53} R.C. 2307.91(Z) defines "competent medical authority" as meaning a medical doctor who is providing a diagnosis for purposes of constituting prima facie evidence of an exposed person's physical impairment that meets the requirements specified in R.C. 2307.92. The medical doctor must also be a "board-certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist," R.C. 2307.91(Z)(1), who "is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person." R.C. 2307.91(Z)(2).

{¶ 54} Furthermore, as the basis for the diagnosis, the medical doctor must not have relied, in whole or in part, on the reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition (1) in violation of any law, regulation, licensing requirement, or medical code of practice of the state in which that examination, test, or screening was conducted; (2) that was conducted without clearly establishing a doctor-patient relationship with the claimant or medical personnel involved in the examination, test, or screening process; or (3) that required the claimant to agree to retain the legal services of the law firm sponsoring the examination, test, or screening. R.C. 2307.91(Z)(3)(a) through (c).

{¶ 55} Additionally, the medical doctor must not spend more than 25 percent of his or her professional practice time in providing consulting or expert services in connection with actual or potential tort actions, and the medical doctor's medical group, professional corporation, clinic, or other affiliated group must not earn more than 20 percent of its revenues from providing those services. R.C. 2307.91(Z)(4).

{¶ 56} "[B]odily injury caused by exposure to asbestos" is defined, for purposes of R.C. 2305.10 and R.C. 2307.92 to 2307.95, as "physical impairment of the exposed person, to which the person's exposure to asbestos is a substantial contributing factor." "Substantial contributing factor," in turn, is defined to mean that "[e]xposure to asbestos is the predominate cause of the physical

impairment alleged in the asbestos claim[,]" *and* that "[a] competent medical authority has determined with a reasonable degree of medical certainty that without the asbestos exposures the physical impairment of the exposed person would not have occurred." R.C. 2307.91(FF)(1) and (2).

{¶ 57} Finally, R.C. 2307.91(G)(G) defines "substantial occupational exposure to asbestos" as meaning "employment for a cumulative period of at least five years in an industry and an occupation in which, for a substantial portion of a normal work year for that occupation, the exposed person * * * (1) [h]andled raw asbestos fibers; (2) [f]abricated asbestos-containing products so that the person was exposed to raw asbestos fibers in the fabrication process; (3) [a]ltered, repaired, or otherwise worked with an asbestos-containing product in a manner that exposed the person on a regular basis to asbestos fibers; or (4) [w]orked in close proximity to other workers engaged in any of the activities described in [R.C. 2307.91(GG)(1), (2), or (3) ] in a manner that exposed the person on a regular basis to asbestos fibers."

## II

{¶ 58} **RETROACTIVE APPLICATION OF R.C. 2307.91, 2307.92, and 2307.93**

{¶ 59} Appellants assert that the trial court erred in finding that the retroactive application of several provisions of H.B. 292 to appellee's asbestos claim violates the Ohio Constitution. We agree with appellants' argument.

## A

{¶ 60} *Standard of Review; Presumption of Constitutionality*

{¶ 61} The decision as to whether or not a statute is constitutional presents a question of law. *Andreyko v. Cincinnati,* 153 Ohio App.3d 108, 2003-Ohio-2759, 791 N.E.2d 1025, ¶ 11. "Questions of law are reviewed de novo, independently, and without deference to the trial court's decision." (Footnote omitted.) Id.

{¶ 62} "[Ohio] statutes enjoy a strong presumption of constitutionality. 'An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. 'A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality.' Id. at 147, 57 O.O. 134, 128 N.E.2d

59 'That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution.' *Xenia v. Schmidt* (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus; *State ex rel. Durbin v. Smith* (1921), 102 Ohio St. 591, 600, 133 N.E. 457; *Dickman,* 164 Ohio St. at 147, 57 O.O. 134, 128 N.E.2d 59." *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570.

## B

{¶ 63} *Test for Unconstitutional Retroactivity*

{¶ 64} The test for determining whether a statute may be applied retroactively was summarized in *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 721 N.E.2d 28:

{¶ 65} "Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments. *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 99, 566 N.E.2d 154. The retroactivity clause nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].' *Miller v. Hixson* (1901), 64 Ohio St. 39, 51, 59 N.E. 749.

{¶ 66} " * * * [R]etroactivity itself is not always forbidden by Ohio Law. Though the language of Section 28, Article II of the Ohio Constitution provides that the General Assembly 'shall have no power to pass retroactive laws,' Ohio courts have long recognized that there is a crucial distinction between statutes that merely apply retroactively (or 'retrospectively') and those that do so in a manner that offends our Constitution. See, e.g., *Rairden v. Holden* (1864), 15 Ohio St. 207, 210–211; *State v. Cook,* 83 Ohio St.3d [404,] 410, 700 N.E.2d 570, * * *. [T]he words 'retroactive' and 'retrospective' have been used interchangeably in the constitutional analysis for more than a century. Id. Both terms describe a law that is 'made to affect acts or facts occurring, or rights accruing, before it came into force.' Black's Law Dictionary (6 Ed.1990) 1317.

{¶ 67} "The test for unconstitutional retroactivity requires the court first to determine whether the General Assembly expressly intended the statute to apply retroactively. R.C. 1.48; *Cook,* 83 Ohio St.3d at 410, 700 N.E.2d 570, citing *Van Fossen* [*v. Babcock & Wilcox Co.* (1988) ], 36 Ohio St.3d 100, 522 N.E.2d 489, at paragraph one of the syllabus. If so, the court moves on to the question of whether the statute is substantive, rendering it *unconstitutionally* retroactive, as opposed to merely remedial[, rendering it constitutionally retroactive]." (Emphasis sic.) *Bielat,* 87 Ohio St.3d at 352–353, 721 N.E.2d 28.

## C

*{¶ 68} Legislature's Express Intention of Retroactive Application*

{¶ 69} As to the first prong of the *Van Fossen, Cook,* and *Bielat* test for determining whether a statute can be constitutionally applied retroactively, we note that the trial court and all parties to this action agree that the General Assembly expressly intended for the provisions in R.C. 2307.91 to 2307.93 to apply retroactively. For example, R.C. 2307.93(A)(2) and (3)(a) require a plaintiff with an asbestos claim pending on the effective date of that section to comply with the requirements of filing a prima facie case set forth in R.C. 2307.92. Thus, it is clear that the General Assembly expressly intended for the provisions in R.C. 2307.91 through 2307.93 to apply retroactively. The remaining question that we must address is whether those provisions are "remedial" or "substantive."

## D

*{¶ 70} Substantive Retroactive Statutes*

{¶ 71} "[A] retroactive statute is substantive—and therefore *unconstitutionally* retroactive—if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." *Bielat,* 87 Ohio St.3d at 354, 721 N.E.2d 28, citing *Cook,* 83 Ohio St.3d at 410–411, 700 N.E.2d 570.

### 1

*{¶ 72} Vested Rights*

{¶ 73} One of the primary purposes of the retroactivity clause in Section 28, Article II of the Ohio Constitution is to prevent the legislature from invading or interfering with the "vested rights" of individuals. See *Bielat,* 87 Ohio St.3d at 357, 721 N.E.2d 28. "A 'vested right' may be created by common law or statute and is generally understood to be the power to lawfully do certain actions or possess certain things; in essence, it is a property right." *Washington Cty. Taxpayers Assn. v. Peppel* (1992), 78 Ohio App.3d 146, 155, 604 N.E.2d 181.

{¶ 74} "A vested right is one which it is proper for the state to recognize and protect, and which an individual cannot be deprived of arbitrarily without injustice[,]" *State v. Muqdady* (2000), 110 Ohio Misc.2d 51, 55, 744 N.E.2d 278, or without his or her consent. *Scamman v. Scamman* (1950), 56 Ohio Law Abs. 272, 90 N.E.2d 617, 619. A right cannot be considered "vested" unless it amounts to something more than a mere expectation of future benefit or interest founded upon an anticipated continuance of existing laws. *Roberts v. Treasurer*

(2001), 147 Ohio App.3d 403, 411, 770 N.E.2d 1085; see, also, *In re Emery* (1978), 59 Ohio App.2d 7, 11, 13 O.O.3d 44, 391 N.E.2d 746.

{¶ 75} Appellee argues that retroactive application of the provisions of H.B. 292 will unconstitutionally impair Mr. Wilson's "vested right in his cause of action." We disagree with this argument.

{¶ 76} Initially, we agree with appellee's assertion that after a cause of action has accrued, it cannot be taken away or diminished by legislative action. *State ex rel. Slaughter v. Indus. Comm.* (1937), 132 Ohio St. 537, 540–541, 8 O.O. 531, 9 N.E.2d 505; *Pickering v. Peskind* (1930), 43 Ohio App. 401, 407–408, 183 N.E. 301. See, also, *Faller v. Mass. Bonding & Ins. Co.* (1929), 7 Ohio Law Abs. 586, 168 N.E. 394, 395–396 ("When a new limitation is made to apply to existing rights or causes of action, a reasonable time must be allowed before it takes effect, in which such rights may be asserted, or in which suit may be brought on such causes of action").

{¶ 77} However, retroactive application of the provisions in H.B. 292 does not take away appellee's vested right in proceeding with her cause of action for bodily injury caused by exposure to asbestos. Appellee still has the right to proceed with that cause of action and to recover for an injury caused by her husband's exposure to asbestos. The relevant provisions of H.B. 292 merely affect the methods and procedure by which that cause of action is recognized, protected, and enforced, not the cause of action itself. *Bielat*, 87 Ohio St.3d at 354, 721 N.E.2d 28.

{¶ 78} For example, R.C. 2307.91(Z) defines the term "competent medical authority" and lists the requirements that have to be met to allow a court to determine that a medical doctor is competent to provide a diagnosis for purposes of constituting prima facie evidence of an exposed person's physical impairment that meets the requirements specified in R.C. 2307.92. Appellee cites the new definition of this term to demonstrate that her vested right in her accrued cause of action has been unconstitutionally impaired.

{¶ 79} However, because this statute "pertains to the competency of a witness to testify * * * it is of a remedial or procedural [rather than substantive] nature." *Denicola v. Providence Hosp.* (1979), 57 Ohio St.2d 115, 117, 11 O.O.3d 290, 387 N.E.2d 231. Since the provision is procedural or remedial rather than substantive, it does not offend the Ohio Constitution. See *Bielat*, 87 Ohio St.3d at 354, 721 N.E.2d 28.

{¶ 80} Both the trial court and appellee have argued in these proceedings that H.B. 292 should not be applied to cases that were pending on the date the statute became effective, because the new statute requires plaintiffs who bring an asbestos claim "to meet an evidentiary threshold that extends above and beyond

the common law standard—the standard that existed at the time [Mr. Wilson] filed his claim." As an example of the common-law standard, the trial court cited *In re Cuyahoga County Asbestos Cases* (1998), 127 Ohio App.3d 358, 713 N.E.2d 20, which held that a plaintiff seeking redress for asbestos-related injuries had a compensable claim when he could show that asbestos had caused an alteration of the lining of the lung. Id. at 364, 713 N.E.2d 20. We find this reasoning unpersuasive.

{¶ 81} While a vested right may be created by the common law, see *Weil*, 139 Ohio St. 198, 22 O.O. 205, 39 N.E.2d 148, it is well settled that "there is no property or vested right in any of the rules of the common law, as guides of conduct, and they may be added to or repealed by legislative authority." *Leis v. Cleveland R. Co.* (1920), 101 Ohio St. 162, 128 N.E. 73, syllabus.

{¶ 82} Furthermore, as the Ohio Attorney General has pointed out in his amicus curiae brief, "[i]t is difficult to maintain * * * that someone has a vested right to a standard that is not the law of the entire State, and is certainly not binding on other appellate districts across the State."

{¶ 83} Additionally, a right cannot be considered "vested" unless it amounts to something more than a mere expectation of future benefit or interest founded upon an anticipated continuance of existing laws. *Roberts*, 147 Ohio App.3d at 411, 770 N.E.2d 1085. In this case, it appears that appellee had nothing more than a mere expectation of future benefit founded upon an anticipated continuance of the law. Id.

{¶ 84} In light of the foregoing, we conclude that appellee has failed to demonstrate that the retroactive application of H.B. 292 will deprive or diminish any vested right held by her or her late husband.

2

{¶ 85} *Accrued Substantive Rights*

{¶ 86} The term "accrued substantive rights" has often been used synonymously with the term "vested rights." See, e.g., *Bielat*, 87 Ohio St.3d at 357, 721 N.E.2d 28. The term "accrued" in its usual or customary meaning is defined as " 'to come into existence as an enforceable claim: vest as a right.' " *State ex rel. Estate of McKenney v. Indus. Comm.*, 110 Ohio St.3d 54, 55, 2006-Ohio-3562, 850 N.E.2d 694, ¶ 8, quoting Webster's Third New International Dictionary (1986) 13. The term "substantive right" has been defined as "a right that can be protected or enforced by law." Black's Law Dictionary (8th Ed.2004) 1349.

{¶ 87} Appellee asserts that R.C. 2307.91(FF)'s definition of "substantial contributing factor" represents a "dramatic departure" from the definition of "substantial factor" in the Ohio Supreme Court's decision in *Horton v. Harwick*

*Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, and that R.C. 2307.91(GG)'s definition of "substantial occupational exposure to asbestos" reimposes the "frequency, regularity, and proximity" test of *Lohrmann* that the Ohio Supreme Court rejected in *Horton.* Therefore, appellee contends, these provisions of H.B. 292 should not be applied retroactively to cases that were filed before the effective date of that statute because their retroactive application would impair the substantive rights of persons with asbestos claims. We disagree with this argument.

{¶ 88} As appellants themselves acknowledge, the General Assembly is not free to make retroactive changes to the settled meaning of a law. When the Ohio Supreme Court interprets a key word or phrase in a statute, those interpretations define substantive rights given to persons who are affected by the statute. *Hearing v. Wylie* (1962), 173 Ohio St. 221, 224, 19 O.O.2d 42, 180 N.E.2d 921, overruled on other grounds by *Village v. Gen. Motors Corp.* (1984), 15 Ohio St.3d 129, 15 OBR 279, 472 N.E.2d 1079. If those substantive rights are substantially altered by the General Assembly when it amends the definition of that key word or phrase, then the amendment cannot be made to apply retroactively to any action pending at the time of the change, since such a retroactive application of a substantive provision would violate Section 28, Article II of the Ohio Constitution. See *Hearing v. Wylie.*[4]

{¶ 89} Appellee argues that the definitions of "substantial contributing factor" and "substantial occupational exposure to asbestos" in R.C. 2307.91(FF) and (GG), respectively, constitute an attempt by the Ohio General Assembly to make an impermissible retroactive change to the settled law in this state regarding the meaning of those phrases. We disagree with this argument.

{¶ 90} In *Horton,* the Ohio Supreme Court was asked to "set forth the appropriate summary judgment standard for causation in asbestos cases." Id. at 682, 653 N.E.2d 1196. The *Horton* court stated as follows:

{¶ 91} "For each defendant in a multidefendant asbestos case, the plaintiff has the burden of proving exposure to the defendant's product and that the product was a substantial factor in causing the plaintiff's injury." Id., paragraph one of the syllabus.

---

4. *Hearing v. Wylie* states: "The General Assembly was aware of the decisions of this court interpreting the word 'injury.' Those interpretations defined substantive rights given to injured workmen to be compensated for their injuries. Those substantive rights were substantially altered by the General Assembly when it amended the definition of 'injury.' To attempt to make that substantive change applicable to actions pending at the time of the change is clearly an attempt to make the amendment apply retroactively and is thus violative of Section 28, Article II, Constitution of Ohio." *Hearing,* 173 Ohio St. at 224, 19 O.O.2d 42, 180 N.E.2d 921.

{¶ 92} In defining the phrase "substantial factor," the court in *Horton* adopted the definition of that phrase contained in Restatement of the Law 2d, Torts (1965), Section 431, Comment *a*:

{¶ 93} " 'The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in a popular sense, in which there always lurks the idea of responsibility, rather than the so-called "philosophical sense," which includes every one of the great number of events without which any happening would not have occurred.' " *Horton*, 73 Ohio St.3d at 686, 653 N.E.2d 1196.

{¶ 94} *Horton* rejected the standard for proving "substantial causation" set forth in *Lohrmann v. Pittsburgh Corning Corp.* (C.A.4, 1986), 782 F.2d 1156, which had held that "[t]o support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Id. at 1162–1163.

{¶ 95} R.C. 2307.91(FF) defines "substantial contributing factor" to mean both of the following: "(1) that exposure to asbestos is the predominate cause of the physical impairment alleged in the asbestos claim, and (2) that a competent medical authority has determined with a reasonable degree of medical certainty that without the asbestos exposures the physical impairment of the exposed person would not have occurred." Contrary to what appellee argues, we conclude that R.C. 2307.91(FF)'s definition of "substantial contributing factor" comports with the definition of "substantial factor" found in *Horton*.

{¶ 96} In support of her position, appellee focuses on the phrase "a cause" in Comment *a* of Section 431 of the Restatement and asserts that the "predominant cause" requirement in R.C. 2307.91(FF)(1) conflicts with the rule adopted by *Horton*. However, appellee is ignoring the language in Comment *a* that states that the word "cause" is being used " 'in its popular sense, in which there always lurks the idea of responsibility, rather than the so-called 'philosophical sense,' which includes every one of the great number of events without which any happening would not have occurred.' " *Horton*, 73 Ohio St.3d at 686, 653 N.E.2d 1196, quoting Comment *a* of Section 431 of the Restatement of the Law 2d, Torts (1965).

{¶ 97} Furthermore, Comment c to Section 431 states:

{¶ 98} "A number of considerations which in themselves or in combination with one another are important in determining whether the actor's conduct is a substantial factor in bringing about harm to another are stated in [section] 433."

{¶ 99} Section 433 of the Restatement of the Law 2d, Torts (1965) states:

{¶ 100} "The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing harm to another:

{¶ 101} "(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it[.]"

{¶ 102} The "Comment on Clause (a)" of Section 433 states:

{¶ 103} "d. There are frequently a number of events each of which is not only a necessary antecedent to the other's harm, but is also recognizable as having an appreciable effect in bringing it about. Of these the actor's conduct is only one. Some other event which is a contributing factor in producing the harm may have such a *predominant* effect in bringing it about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor." (Emphasis added.)

{¶ 104} When all of the foregoing is considered, it is apparent that the "predominant cause" element in R.C. 2307.91(FF) is consistent with Section 431, Comment *a* of the Restatement of the Law 2d, Torts, adopted in *Horton.* See *Horton,* 73 Ohio St.3d at 686, 653 N.E.2d 1196.

■■■ {¶ 105} We also reject appellee's argument that R.C. 2307.91(FF) is in conflict with *Horton* because it contains a requirement that a "competent medical authority" determine with a reasonable degree of medical certainty that without the asbestos exposures, the physical impairment of the exposed person would not have occurred. R.C. 2307.91(FF)(2). R.C. 2305.10 has always used the term "competent medical authority." Prior to H.B. 292, neither the General Assembly nor the Ohio Supreme Court had defined the phrase, and, therefore, it was appropriate for the General Assembly to define that phrase. Additionally, defining the term "competent medical authority" is clearly a procedural, rather than a substantive, act. See *Denicola,* 57 Ohio St.2d at 117, 11 O.O.3d 290, 387 N.E.2d 231.

■■■ {¶ 106} Furthermore, including a "but for" component in the definition of "substantial contributing factor" contained in R.C. 2307.91(FF)(2) (i.e., the competent medical authority must determine with a reasonable degree of medical certainty that the physical impairment would not have occurred without or "but for" the asbestos exposures) is consistent with this state's long-standing definition of "proximate cause," to wit: "Briefly stated, the proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." *Aiken v. Indus. Comm.* (1944), 143 Ohio St. 113, 117, 28 O.O. 50, 53 N.E.2d 1018. We also find the "but for" requirement consistent with Section 431, Comment *a* of the Restatement of the Law 2d, Torts, adopted in *Horton,* 73 Ohio

St.3d at 686, 653 N.E.2d 1196, which uses the word "cause" in its " 'popular sense, in which there always lurks the idea of responsibility, rather than the so-called "philosophical" sense, which includes every one of the great number of events without which any happening would not have occurred.' "

{¶ 107} We also agree with the following arguments presented by Owens–Illinois, Inc., in its amicus curiae brief, regarding these issues:

{¶ 108} "R.C. 2307.91(FF) and 2307.92(B–D) [do not] conflict with *Horton v. Harwick Chemical Corp.*, as [appellee] contend[s]. These sections address a different issue than the one addressed in *Horton*. In *Horton*, the Ohio Supreme Court rejected the 'frequency, regularity, and proximity' test of *Lohrmann* for determining 'whether a particular product was a substantial factor in producing the plaintiff's injury.' *Horton*, 73 Ohio St.3d at 683, 653 N.E.2d at 1200 (emphasis added). As the Court made clear, it was addressing the standard for proving the liability of '*each defendant* in a multidefendant asbestos case' and the causative role of 'exposure to *the defendant's product*'—as opposed to the causative role of asbestos generally—at the proof (summary judgment) stage. Id. at 686, 653 N.E.2d at 1202 (emphasis added). The Court declined to require a plaintiff to 'prove that he was exposed to a *specific product* on a regular basis over some extended period of time in close proximity to where the plaintiff actually worked in order to prove that *the product* was a substantial factor in causing his injury.' Id. (emphasis added).

{¶ 109} "R.C. 2307.92, by contrast, does not concern proof or whether exposure to an individual defendant's individual product caused an injury. Instead, it concerns only the threshold, prima facie showing of collective exposure to asbestos, and whether that collective exposure was sufficient to cause the injury. The prima facie showing serves only to identify whether the case genuinely involves asbestos-related injury, and not the further and more difficult question whether a particular product or particular defendant is responsible. [Footnote Omitted.] Since *Horton* did not address this issue at all, this section of HB 292 cannot conflict with *Horton*.

{¶ 110} "There is a section of HB 292 that contravenes *Horton*, but it is expressly made only prospective, raising no retroactivity issues. R.C. 2307.96, which governs the standard for proving 'that the conduct of [a] particular defendant was a substantial factor in causing the injury,' was expressly intended to reject *Horton* and to adopt the 'frequency, regularity, and proximity' test of *Lohrmann*. *See* H.B. 292, Section 5 * * * (discussing the reasons the legislature disagreed with the Court about the value of the *Lohrmann* test). The General Assembly was careful to make this section *prospective* only. *See* R.C. 2307.96(C) ("This section applies only to tort actions that allege any injury or loss to person

resulting from exposure to asbestos and that are *brought on or after the effective date of this section.*') (emphasis added). [Footnote omitted.]

{¶ 111} " * * *

{¶ 112} "Finally, HB 292's requirement (in smoker/lung cancer and wrongful death cases only) of a prima facie showing either of 'substantial occupational exposure' to asbestos or of exposure equal to 25 fiber per cc years (R.C. 2307.92(C)(1)(c), 2307.92(D)(1)(c)), does not 'reimpose' the *Lohrmann* test that the Ohio Supreme Court had rejected in *Horton*. This is true for the same reasons discussed above: First, the 'substantial occupational exposure' provisions were not intended to 'reimpose' the *Lohrmann* test. The General Assemble knew how to adopt *Lohrmann*, and when it did so, it respected the boundaries of its power and did so prospectively. Second, these provisions again address the prima facie case (whether the claimant had sufficient collective exposure to asbestos generally to state a colorable claim of asbestos-related injury), and not the issue of proof regarding an individual product or defendant, which was the issue in *Horton*.

{¶ 113} "Rather than addressing the question at issue in *Horton* (how a plaintiff may prove that a particular defendant, out of all the parties to whose products the plaintiff was exposed, is liable for its role in causing an injury), the 'substantial occupational exposure' provisions are one of two alternative means by which a plaintiff may satisfy a prima facie asbestos exposure threshold in lung cancer and wrongful death cases. Since 1980 it has been the law in Ohio by statute that an asbestos claim requires 'injury caused by exposure to asbestos.' R.C. 2305.10. HB 292 merely defines two alternative ways to [make a prima facie] show[ing of] exposure, displacing no statute or Supreme Court case law: either by a direct showing under a quantitative standard (25 fiber per cc years) or by a showing of 'substantial occupational exposure' (five years' work in a job in which the worker either handled raw asbestos, or fabricated asbestos-containing products, or worked with asbestos-containing products, or worked close to others who did these thing). This legislative clarification and specification of 'exposure' is not unconstitutionally retroactive."

{¶ 114} In light of the foregoing, we conclude that applying R.C. 2307.91(FF) and (GG) to actions filed before the effective date of H.B. 292 does not violate Section 28, Article II of the Ohio Constitution.

### 3

{¶ 115} *Imposition of New or Additional Burdens, Duties, etc.*

{¶ 116} As to the issue of whether retroactive application of the relevant provisions of H.B. 292 would impose "new or additional burdens, duties, obli-

gations, or liabilities as to a past transaction," we first note that appellants contend that this branch of the test for unconstitutional retroactivity "concerns vested rights in past acts, such as business activity or contracts, and has no obvious application to tort actions."

{¶ 117} However, it appears that this branch of the test for unconstitutional retroactivity has a wider application than business activity or contracts. For instance, in *Bielat*, the court stated, "The retroactivity clause nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].'" *Bielat*, 87 Ohio St.3d at 352–353, 721 N.E.2d 28, quoting *Miller*, 64 Ohio St. at 51, 59 N.E. 749.

{¶ 118} Nevertheless, we conclude that the retroactive application of the relevant provisions of H.B. 292 does not impose any "new or additional burdens, duties, obligations, or liabilities" on persons seeking to bring an asbestos claim. The changes made by H.B. 292, such as defining "competent medical authority," are procedural or remedial, and not substantive. Therefore, the retroactive application of H.B. 292 does not offend the Ohio Constitution. See *Bielat*, 87 Ohio St.3d at 354, 721 N.E.2d 28.

## E

{¶ 119} *Remedial Retroactive Statutes*

{¶ 120} A retroactive statute is remedial—and therefore *constitutionally* retroactive—if it is one that affects "only the remedy provided, and include[s] laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Cook*, 83 Ohio St.3d at 411, 700 N.E.2d 570, citing *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d 489. A remedial statute is one that merely affects "'the methods and procedure by which *rights are recognized, protected and enforced, not * * * the rights themselves.*' (Emphasis added.)" *Bielat*, 87 Ohio St.3d at 354, 721 N.E.2d 28, quoting *Weil v. Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 205, 22 O.O. 205, 39 N.E.2d 148. "A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively." *Cook*, 83 Ohio St.3d at 411, 700 N.E.2d 570.

## 1

{¶ 121} *Remedial Provisions of H.B. 292*

{¶ 122} We conclude that the provisions in H.B. 292 at issue in this case, i.e., R.C. 2307.91 through 2307.93, constitute remedial provisions that merely affect "the methods and procedure by which rights are recognized, protected and

enforced, not * * * the rights themselves." *Weil,* 139 Ohio St. at 205, 22 O.O. 205, 39 N.E.2d 148. These provisions "merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Cook,* 83 Ohio St.3d at 411, 700 N.E.2d 570.

{¶ 123} The relevant provisions of H.B. 292 remedially changed the law in this state by clarifying the meaning of ambiguous phrases like "bodily injury caused by exposure to asbestos" and "competent medical authority." The ambiguity in these phrases resulted in an extraordinary volume of cases that strains the courts in this state and threatens to overwhelm our judicial system. See Section 3(A)(3) of H.B. 292. The extraordinary volume of cases has led to circumstances in which the plaintiffs in asbestos actions are receiving less than 43 cents on every dollar awarded, and 65 percent of the compensation paid, thus far, has gone to claimants who are not sick. Id. at Section 3(A)(2), Thus, the remedial legislation in the relevant provisions of H.B. 292 serves to avoid a multiplicity of suits and the accumulation of costs and promotes "the interests of all parties." *Bielat,* 87 Ohio St.3d at 354, 721 N.E.2d 28, quoting *Rairden v. Holden,* 15 Ohio St. at 211.

2

{¶ 124} *Curative Statutes*

 {¶ 125} Our conclusion that the provisions in R.C. 2307.91 through 2307.93 are remedial "is strengthened by our state's recognition of the validity of retrospective *curative* laws." (Emphasis sic.) *Bielat,* 87 Ohio St.3d at 355, 721 N.E.2d 28. "[T]he language that immediately follows the prohibition of retroactive laws contained in Section 28, Article II of our Constitution expressly permits the legislature to pass statutes that ' "authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties and officers, by *curing omissions, defects, and errors in instruments and proceedings, arising out of their want of conformity with the laws of this state."* ' (Emphasis added.) *Burgett v. Norris* (1874), 25 Ohio St. 308, 316, quoting Section 28[, Article II of the Ohio Constitution]. *Burgett* recognized that curative acts are a valid form of retrospective, remedial legislation when it held that '[i]n the exercise of its plenary powers, the legislature * * * could cure and render valid, by remedial retrospective statutes, that which it could have authorized in the first instance.' Id. at 317." *Bielat,* 87 Ohio St.3d at 355–356, 721 N.E.2d 28.

{¶ 126} By enacting the disputed provisions of H.B. 292, the General Assembly was curing and rendering valid, by a remedial retrospective statute, that which it could have authorized in the first instance. See *Bielat,* 87 Ohio St.3d at 354–355, 721 N.E.2d 28, citing *Burgett.* Specifically, the relevant provisions of H.B. 292 clarify the meaning of such potentially ambiguous phrases as "competent medical authority" and "bodily injury caused by exposure to asbestos."

{¶ 127} As we have indicated, the ambiguity of those phrases has produced an extraordinary volume of cases that strains our courts and that threatens to overwhelm the judicial system in this state. Because of the overwhelming number of asbestos cases that have been filed by persons who may have been exposed to asbestos but who are not sick, the ability of defendants to compensate those plaintiffs who have been exposed to asbestos and who *are* sick has been seriously compromised. See Section 3(A)(2) and(5) of H.B. 292.

{¶ 128} To resolve this problem, the General Assembly saw fit to enact more precise definitions of ambiguous terms like "competent medical authority" and "bodily injury caused by exposure to asbestos" to ensure that only those parties who actually have been harmed by exposure to asbestos receive compensation for their injuries. Thus, as the Ohio Constitution and *Burgett* expressly permit, the relevant provisions of H.B. 292 cure an omission, defect, or error in the proceedings involving asbestos personal injury litigation in this state. See *Bielat*, 87 Ohio St.3d at 356, 721 N.E.2d 28.

## F

{¶ 129} *Appellee's Concluding Arguments*

{¶ 130} Finally, appellee raises the following argument in her conclusion:

{¶ 131} "H.B. 292 takes away the remedy for the enforcement of the vested right of certain asbestos plaintiffs, including [decedent] Chester Wilson [who is now represented by appellee], and only promotes the interests of the [appellants]. After passage of H.B. 292, asbestos plaintiffs who cannot meet the new require-ments set forth in H.B. 292 have no remaining remedy in a cause of action that arose and vested well before the enactment of the statute." We find this argument unpersuasive.

{¶ 132} As the Ohio Supreme Court has recently stated:

{¶ 133} " ' "It is not a court's function to pass judgment on the wisdom of the legislation, for that is the task of the legislative body which enacted the legislation." ' *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, ¶ 14, quoting *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 48, 616 N.E.2d 163. 'The Ohio General Assembly, and not this court, is the proper body to resolve public policy issues.' *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 14." *State ex rel. Triplett v. Ross*, 111 Ohio St.3d 231, 2006-Ohio-4705, 855 N.E.2d 1174, ¶ 55.

{¶ 134} In light of the foregoing, appellants' assignment of error is sustained.

## III

{¶ 135} The trial court's judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion and in accordance with the law of this state.

Judgment reversed
and cause remanded.

POWELL, P.J., and BRESSLER, J., concur.